**GRAHAM OIL CO., an Oregon corporation, Plaintiff–Appellant,**

v.

**ARCO PRODUCTS CO., A DIVISION OF ATLANTIC RICHFIELD CO., a Delaware corporation, Defendant–Appellee.**

Nos. 92–35007, 92–35380.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1993.

Decided Dec. 16, 1994.

As Amended March 13, 1995.

Mildred J. Carmack, Schwabe, Williamson & Wyatt, Portland, OR, for plaintiff-appellant.

Charles F. Adams, Stoel, Rives, Boley, Jones & Grey, Portland, OR, for defendant-appellee.

Before: REINHARDT, BRUNETTI, and FERNANDEZ, Circuit Judges.

Opinion by Judge REINHARDT; Dissent by Judge FERNANDEZ.

REINHARDT, Circuit Judge:

## I.  INTRODUCTION

Graham Oil Co. ("Graham Oil") appeals the judgment of the district court, which dismissed, with prejudice, all of its claims against ARCO Products Co. ("ARCO").  The claims were dismissed because Graham Oil

refused to submit to arbitration as required by an arbitration clause in its distributorship agreement with ARCO.

Graham Oil contends that the arbitration clause is invalid because it requires the surrender of certain rights provided under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2806. Accordingly, it argues that the district court—not an arbitrator—must decide the merits of its claims under the PMPA. We agree.

## II. FACTS

For nearly forty years, Graham Oil was a branded distributor of ARCO gasoline in Coos Bay, Oregon. On October 2, 1990, Graham Oil and ARCO entered into a Branded Distributor Gasoline Agreement ("Agreement"), which was effective from January 1, 1991, to December 31, 1993. Among other things, the parties agreed that Graham Oil would purchase a minimum amount of gasoline each month during the two-year period of the Agreement.

On November 10, 1991, ARCO notified Graham Oil that it intended to terminate the Agreement as of October 31, 1991, because Graham Oil had not been purchasing the required minimum amount of gasoline as specified in the Agreement. On November 27, 1991, Graham Oil filed a motion for a preliminary injunction against ARCO in federal district court. Graham Oil argued that ARCO had violated the PMPA by deliberately raising its prices so that Graham Oil would be unable to meet the minimum gasoline requirements. Accordingly, Graham Oil argued that ARCO should not be allowed to terminate the Agreement.

On December 3, 1991, the district court issued a preliminary injunction that prohibited ARCO from terminating the Agreement for 90 days. Instead of reaching the merits of Graham Oil's claims under the PMPA, however, the court found that arbitration was Graham Oil's exclusive remedy. The court required the parties to complete the arbitration within 90 days.

Graham Oil appealed the district court's order and refused to submit to arbitration. Upon the expiration of the 90 days, ARCO moved for summary judgment. Graham Oil filed a cross-motion to keep the court's preliminary injunction in force pending the resolution of its appeal. The court denied Graham Oil's cross-motion and granted summary judgment in favor of ARCO. On appeal, Graham Oil argues that the arbitration clause in the Agreement is invalid and that the court must determine the merits of its claims under the PMPA.

## III. ANALYSIS

This case involves the validity of an arbitration clause that, in addition to specifying arbitration as the means by which disputes are to be resolved, purports to waive certain statutory rights conferred upon petroleum franchisees by the PMPA. We conclude that the clause is invalid. As a result, we strike it and remand for further proceedings.

### A. Validity of the Clause.

■ . 1. Purpose of the PMPA. In determining the validity of the arbitration clause, we first review the purpose of the PMPA. Congress enacted the PMPA with the primary goal of "protecting franchisees." See Khorenian v. Union Oil Co., 761 F.2d 533, 535 (9th Cir.1985) (internal quotes omitted). Such protection was needed in order to correct the great "disparity of bargaining power" between petroleum franchisors and franchisees. See S.Rep. No. 731, 95th Cong., 2d Sess., in 1978 U.S.C.C.A.N. 873, 876 [hereinafter Legislative History]. According to the legislative history of the PMPA, petroleum franchise agreements generally are nothing more than "contracts of adhesion" that perpetuate the "continuing vulnerability of the franchisee to the demands and actions of the franchisor." Id.

In order to correct some of the effects of this disparity in bargaining power, Congress enacted certain protections for franchisees like Graham Oil. Essentially, the Act affords franchisees statutory remedies for the arbitrary or discriminatory termination (or nonrenewal) of franchises by their franchisors. Id. Among other things, these protections include exemplary damages, reasonable attorney's fees, and a one-year statute of limitations. See 15 U.S.C. § 2805; Legislative History at 899. These rights and benefits are, of course, not only designed to compen-

sate for injury, but also to deter unfair conduct.

2. *Arbitration Clause.* Turning to the arbitration clause, we note as an initial matter that arbitration is a form of dispute resolution that finds favor in the courts. In a number of instances, the Supreme Court has upheld agreements to submit statutory claims to arbitration, *see, e.g., Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act, 9 U.S.C. § 2 *et seq.*]."), including claims involving unfair business practices. Among the claims in that category are those arising under the Sherman Act, the Securities Exchange Act of 1934, and the Securities Act of 1933. *See, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Some of the arbitration provisions—like the provisions here—have been contained in form agreements executed before the dispute arose. *See, e.g., De Quijas,* 490 U.S. at 478, 109 S.Ct. at 1918; *McMahon,* 482 U.S. at 223, 107 S.Ct. at 2335.

3. *Analysis.* Nothing in the PMPA suggests that Congress intended to change the general presumption in favor of upholding agreements to submit statutory claims to arbitration. A simple agreement for arbitration of disputes is valid, whether or not contained in a franchise agreement. Such a provision constitutes nothing more than an agreement to substitute one legitimate dispute resolution *forum* for another and involves no surrender of statutory protections or benefits.

However, the fact that franchisees may agree to an arbitral forum for the resolution of statutory disputes in no way suggests that they may be forced by those with dominant economic power to surrender the statutorily-mandated rights and benefits that

Congress intended them to possess. This is certainly true in cases arising under the PMPA, which was enacted to shield franchisees from the gross "disparity of bargaining power" that exists between them and franchisors. If franchisees could be compelled to surrender their statutorily-mandated protections as a condition of obtaining franchise agreements, then franchisors could use their superior bargaining power to deprive franchisees of the PMPA's protections. In effect, the franchisors could simply continue their earlier practice of presenting prospective franchisees with contracts of adhesion that deny them the rights and benefits afforded by Congress. In that way, the PMPA would quickly be nullified.

Here, the arbitration clause[1] purports to forfeit certain important statutorily-mandated rights or benefits afforded to Graham Oil and other franchisees by the PMPA. First, the arbitration clause expressly forfeits Graham Oil's statutorily-mandated right to recover exemplary damages from ARCO if Graham Oil prevails on certain claims. The clause provides that neither party can be awarded exemplary damages. *Compare* 15 U.S.C. § 2805(d)(1)(B) ("If the franchisee prevails in [certain] action[s] ... such franchisee shall be entitled ... *to exemplary damages,* where appropriate...." (emphasis added)) *with* Agreement § 22(b) ("The arbitrator(s) *may not assess* punitive or *exemplary damages*...." (emphasis added)).

Second, the arbitration clause expressly forfeits Graham Oil's statutorily-mandated right to recover reasonable attorney's fees from ARCO if Graham Oil prevails on certain claims. The clause provides that each party will bear its own attorney's fees. *Compare* 15 U.S.C. § 2805(d)(1)(C) ("If the franchisee prevails in [certain] action[s] ... such franchisee shall be entitled ... to *reasonable attorney* and expert witness *fees* to be paid by the franchisor...." (emphasis added)) *with* Agreement § 22(a) ("*Each party shall pay its own costs and expenses, including attorneys' fees related to such arbitration*...." (emphasis added)).

Third, the arbitration clause expressly forfeits Graham Oil's statutorily-mandated right

---

1. The relevant provisions of the arbitration clause are set forth in the Appendix below.

to a one-year statute of limitations on its claims against ARCO. The clause reduces the time in which a claim can be brought from one year to 90 days, or in some cases six months. *Compare* 15 U.S.C. § 2805(a) ("[N]o such action may be maintained unless commenced *within 1 year* after . . . the date the franchisor fails to comply with [certain] requirements . . . of this title.") *with* Appendix, EXHIBIT E § A ("The party waives the right to seek any relief or pursue any claim not included in an arbitration demand filed . . . *within 90 days* following the date the party knew or should have known of the facts giving rise to the claim [and in no event more than six months after the occurrence of the facts giving rise to the claim]" (emphasis added)).

█ Each of the three statutory rights is important to the effectuation of the PMPA's policies. The purpose of exemplary damages is to deter franchisors from engaging in improper terminations of franchise agreements. The purpose of attorney's fees is to deter franchisors from improperly contesting meritorious claims. Finally, the purpose of a one-year statute of limitations is to afford franchisees a reasonable period of time in which to seek relief for improper terminations and other abuses by petroleum franchisors. In attempting to strip franchisees of these statutory rights and benefits by means of an arbitration clause included in the franchise agreement, ARCO violated the purpose as well as the specific terms of the PMPA.

Because the arbitration clause employed by ARCO compels Graham Oil to surrender important statutorily-mandated rights afforded franchisees by the PMPA, we hold that the clause contravenes the Act.

*B. Severability of the Clause.*

█ Having determined that ARCO's arbitration clause violates federal law, we turn to the question of its severability. "Arbitration clauses [must] be treated as severable from the documents in which they appear unless there is clear intent to the contrary." *Re-*

*public of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 476 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992). Here, there is no evidence of any contrary intent.[2] More important from a practical standpoint, neither party suggests that if the arbitration clause is unlawful, the entire contract must be invalidated. Accordingly, we conclude that, as in the usual case, the arbitration clause here is severable.

█ The more difficult question is whether the *entire* arbitration clause should be severed, or simply the provisions pertaining to exemplary damages, attorney's fees, and the statute of limitations. Relying on principles that are analogous to those we use in determining whether a particular clause is severable from an entire contract, we conclude that in this case the *entire* clause must be eliminated.

█ It is a well-known principle in contract law that a clause cannot be severed from a contract when it is an integrated part of the contract. As one leading treatise has noted, "a contract should be treated as entire when by consideration of its terms, nature and purposes each and all of the parts appear to be interdependent and common to one another." Joseph D. Calamari & Joseph M. Perillo, *Contracts* 478 n. 76 (3d ed. 1987). As we noted in one of our early surveys of contract law, a "contract is entire, and not severable, when, by its terms, nature, and purpose, it contemplates and intends that each and all of its parts, [and] material provisions . . . are common to the other, and interdependent." *Hudson v. Wylie,* 242 F.2d 435, 446 (9th Cir.1957).

Here, the offending parts of the arbitration clause do not merely involve a single, isolated provision; the arbitration clause in this case is a highly integrated unit containing three different illegal provisions. Unlike the other clauses, the arbitration clause here includes a

---

2. In fact, the franchise agreement expressly states that the entire arbitration clause—paragraph 22 and Exhibit E—survives the termination or expiration of the agreement. *See* Appendix ¶ 22(c).

survival provision that expressly preserves the entire clause in the event the contract is declared invalid. Moreover, it establishes a unified procedure for handling all disputes, and its various unlawful provisions are all a part of that overall procedure. Thus, we conclude that the clause must be treated as a whole and that its various provisions are not severable.

Our decision to strike the entire clause rests in part upon the fact that the offensive provisions clearly represent an attempt by ARCO to achieve through arbitration what Congress has expressly forbidden. Congress enacted the PMPA precisely to prevent the type of agreement that ARCO included in the arbitration clause of its franchise contract. ARCO attempted to use an arbitration clause to achieve its unlawful ends. Such a blatant misuse of the arbitration procedure serves to taint the entire clause. As a leading treatise notes, severance is inappropriate when the entire clause represents an "integrated scheme to contravene public policy." *See* E. Allan Farnsworth, *Farnsworth on Contracts* § 5.8, at 70 (1990). For the above reasons, we conclude that the entire arbitration clause, and not merely the offensive provisions, must be stricken from the contract. We remand to the district court, which is the proper forum for the resolution of this underlying dispute.

## IV. CONCLUSION

The district court improperly dismissed Graham Oil's claims. The arbitration provision contained in the franchise agreement is invalid, and the court—not an arbitrator—must decide the merits of the claims. Accordingly, the judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

## APPENDIX

BRANDED DISTRIBUTOR GASOLINE STANDARD TERMS AND CONDITIONS

. . . .

22. *Resolution of Disputes*

a) Except as set forth below or where prohibited by applicable law, any dispute or controversy relating to or arising out of the Agreement ... shall be resolved by binding arbitration in accordance with the procedures and rules set forth in Exhibit E attached hereto and incorporated herein. The site of such arbitration shall be set forth in Exhibit E. The decision of the arbitrator(s) shall be final and binding on the parties and access to a judicial forum is foreclosed, except to enforce an arbitral decision or as required by law. Judgment upon the award of the arbitrator(s) may be entered and enforced in any court having jurisdiction thereof. Each party shall pay its own costs and expenses, including attorneys' fees related to such arbitration, except that the cost and expenses of the arbitration association or service utilized, stenographic record, and witnesses and proofs that may have been produced at the direction of the arbitrator(s) shall be paid by the party against whom the decision of the arbitrator(s) is entered and the cost of the arbitrator(s) shall be paid as set forth in the succeeding sentence. If an arbitral panel consists of a single arbitrator, the cost and expenses of the arbitrator shall be paid by the party against whom the decision of the arbitrator is entered; however, if an arbitral panel consists of three arbitrators, the cost and expenses of the two additional arbitrators shall be paid by the party which initially requested three arbitrators; the cost and expenses of any single arbitrator appointed by the arbitration association or service utilized, as set forth in Section F of Exhibit E, before the arbitral panel is selected shall be paid one-half by the plaintiff(s) and one-half by the defendant(s).

b) The arbitrator(s) may not assess punitive or exemplary damages but may award both legal and equitable relief. If the dispute or controversy involves a claim for equitable relief as well as a claim for damages or other legal relief and the arbitrator(s) enter(s) a decision as to the equitable claims before entering a decision as to the legal claims, judgment upon the decision as to the equitable relief may be immediately entered and enforced in any court having jurisdiction thereof.

c) This Paragraph 22 shall survive termination or expiration of the Agreement as to any claims covered by the Agreement.

\*　　\*　　\*

EXHIBIT E

*PROCEDURES FOR ARBITRATION*

A. *INITIATION*

To initiate an arbitration, ARCO or Buyer must file with the arbitration association or service set forth in Section J below (the Association/Service) and send the opposing party at the address specified in the Notices provision of the Agreement by registered or certified mail, return receipt requested, a written arbitration demand. The demand shall set forth a clear and complete statement of the nature of the claim, its basis, the remedy sought, including the amount of damages if any, and whether the party desires a panel consisting of one or three arbitrator(s). The party waives the right to seek any relief or pursue any claim not included in an arbitration demand filed and served within 90 days following the date the party knew or should have known of the facts giving rise to the claim and in no event more than six months after the occurrence of the facts giving rise to the claim in the absence of active fraud or concealment of the facts by the opposing party.

. . . .

FERNANDEZ, Circuit Judge, dissenting:

I agree with the majority that arbitration of PMPA disputes is appropriate. Where we part company is at the point where the majority decides to strike down the arbitration provision in its entirety because that provision purports to remove some remedies that would otherwise be available under the PMPA.

Graham suggests the court should evince a hostility to arbitration in cases of this type. The majority does not exactly acquiesce, but it does suggest that Graham should not be bound to arbitration at all. Why? The only reason, subliminal as it is, may be that arbitration is such a bad thing for companies like Graham that a few limitations of statutory

rights (entirely satellite [1] to any dispute) will taint the whole.

In the past that kind of argument has not carried the day. Neither the Supreme Court nor this court has accepted a negative view of arbitration. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 22–23, 111 S.Ct. 1647, 1651–56, 114 L.Ed.2d 26 (1991); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226–27, 107 S.Ct. 2332, 2337–38, 96 L.Ed.2d 185 (1987); *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932, 934–35 (9th Cir.1992); *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282, 286–87 (9th Cir.1988). When it adopted the broad language of the Federal Arbitration Act, Congress also rejected a negative view of arbitration proceedings. *See* 9 U.S.C. §§ 1–16. I do not think we should adopt a negative view at this time.

I will assume, without deciding, that the arbitration provision's removal of attorneys fees and punitive damages and its changing of the date to bring a claim are all provisions which, as a matter of law, cannot be agreed to by these contracting parties. I will also assume that those questions should not be submitted to the arbitrator in the first instance, although I find that question to be a knotty one indeed. Even given those assumptions, I disagree with the conclusion that the arbitration provision should be stricken in its entirety.

Although we must descry the intent of the parties, I do not agree that we should determine that public policy considerations must lead to a conclusion that Graham (or Congress) would not have wanted arbitration in this case. Rather, we should ask if the improper requirements so permeate the arbitration provision that the whole of it must be stricken. *See, e.g., Sheet Metal Workers' Int'l Ass'n, Local 206 v. R. K. Burner Sheet Metal, Inc.,* 859 F.2d 758, 761 (9th Cir.1988); *National Labor Relations Board v. Southern California Pipe Trades Counsel No. 16,* 449 F.2d 668, 672–73 (9th Cir.1971); *Plumbers and Steamfitters Union v. Dillion,* 255 F.2d

---

1. By "satellite" I mean that neither exemplary damages, attorney fees, nor statutes of limitations have anything to do with the arbitrable question—was or was not there a breach of the agreement?

820, 823 (9th Cir.1958). That is a much more appropriate index of the intent of the parties, or either of them, than some assumption about what one of the parties might or might not have obtained in some Panglossian world. Who knows what should be assemed in this would? I, for one, think that an assumption that there would have been no arbitration provision at all is unfounded. Reliance upon public policy to say that there should not be one is similarly unfounded.

Here the contract itself does not provide the specific severance clause that we find in many commercial contracts.[2] Nevertheless, as I see it, the arbitration provision can and does stand up quite well without the offending provisions and would have been acceptable to both parties in that form. I have not the slightest doubt that to the extent arbitration is desirable it would have been just as desirable without those provisions. They are not a sine qua non of arbitral attractiveness and are not intertwined with the arbitration provision. If arbitration is a beauty, it is no less a one because it has lost a slipper. That indicates that arbitration should be required in this case.

Nor do I believe that this blinks at reality. Had the arbitration provision been offered without the offending provisions, Graham would surely have accepted it in that more favorable form. It would have been less favorable to ARCO, but that company would undoubtedly have still offered the provision, even without that which it could not have.

In fine, the parties agreed upon arbitration. Some of the terms they agreed to may not be possible. However, on the whole, arbitration *is* possible, and the real point of this litigation—should ARCO pay damages for breaching the agreement by mispricing its products—can and should be submitted to the arbitrators, as agreed. Thus, I do not agree that we should elide the arbitration provision and bring the whole of this contractual dispute into the federal courts based upon an idea that a picaresque oil company wronged its franchisee when it asked for arbitration of disputes between them. Arbi-

tration is a favored procedure, and we should favor it here.

Therefore, I respectfully dissent.

## ORDER

### March 13, 1995

The opinion in this case filed December 16, 1994 shall be amended by deleting Section III.B, which begins on page 15519 and ends on page 15521, and replacing it with the following:

In addition, the dissent, which begins on page 15524 and ends on page 15526, shall be deleted and replaced with the following:

---

2. The contract does have a rather ill-written paragraph that might be described as a severance clause. That paragraph provides that "[i]f the Agreement, or any procedure ... shall at any time be in conflict with any legal requirements ... then the Agreement shall immediately become inoperative and ineffective with respect thereto." It then goes on to provide that should that event occur either party may terminate the agreement in its entirety. Para. 20. Whatever one is to think about that paragraph, I would feel somewhat disingenuous were I to assert that *it* resolved the issue in this case. I shall not do so.