**Ephraim U. ETOKIE**

v.

**CARMAX AUTO SUPERSTORES, INC.**

**Civil Action No. WMN–99–802.**

United States District Court, D. Maryland.

Sept. 20, 2000.

Ephraim U. Etokie, Savage, MD, pro se.

Joseph D. McCluskey, Richmond, VA, Eric Hemmendinger, Baltimore, MD, for defendant.

## MEMORANDUM

NICKERSON, District Judge.

Before the Court is Defendant CarMax Auto Superstores, Inc.'s Motion to Compel Arbitration (Paper No. 36). Plaintiff has opposed the motion, and Defendant has replied. Upon a review of the motion and

the applicable case law, the Court deter-mines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted.

## I. BACKGROUND

This case arises from pro se Plaintiff's employment as an Inventory Associate in one of Defendant's stores. Plaintiff, who is deaf, filed a complaint in this Court against his former employer, alleging dis-crimination, retaliation, and failure to ac-commodate in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, as well as asserting sever-al state law claims.

As part of his employment application, Plaintiff signed an arbitration agreement. Defendant's Motion, Decl. Of Pamela Par-sons, Exh. 1. The application stated that he would not be considered for employ-ment unless he accepted the agreement. The agreement provides that all claims arising out of application for employment, employment, or cessation of employment with Defendant shall be settled by final and binding arbitration.[1] The Carmax Dispute Resolution Rules and Procedures[2] provide that if an Associate[3] files a lawsuit in court to resolve such claims, the Associ-ate agrees that the court shall require the Associate to arbitrate the dispute. Defen-dant's Motion, Parsons Decl., Exh. 2, Rule 3. On April 11, 1998, Plaintiff paid a $75 fee and filed a formal request for arbitra-tion, asserting claims against Defendant under Title VII of the Civil Rights Act of 1964 and the ADA. The claims were never arbitrated, however, because Plaintiff aborted the process.

Defendant now moves the Court to compel arbitration under the agreement pursuant to section 4 of the Federal Arbi-tration Act (FAA). 9 U.S.C. § 4. Upon is-suance of an order compelling arbitration, Defendant requests that the Court either stay these proceedings until completion of the arbitration pursuant to 9 U.S.C. § 3, or dismiss the complaint pursuant to Rule 12(b)(1) and (6).

## II. DISCUSSION

■ The FAA establishes "a liberal federal policy favoring arbitration agree-ments." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). To effec-tuate this policy, federal courts should, whenever possible, enforce agreements to arbitrate. *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 813 (4th Cir.1989). Under section 2 of the FAA, a written provision in the application for employment to settle a plaintiff's claims through arbitration, shall be valid, irrevocable, and enforceable unless con-tract law or equity dictate otherwise. 9 U.S.C. § 2.

Plaintiff argues that the arbitration agreement is unenforceable for two rea-sons: (1) the cost sharing provisions of the

1. The Dispute Resolution Rules and Proce-dures provide that "All previously unasserted Associate claims arising under federal, state or local statutory or common law shall be subject to arbitration. Merely by way of ex-ample, these claims include, but are not limit-ed to, claims arising under the Age Discrimi-nation in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act (ADA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, as amended, … state discrimination statutes, state statutes and/or common law regulating employment termination, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, wrongful discharge,

wrongful arrest/wrongful imprisonment, in-tentional/negligent infliction of emotional dis-tress or defamation." Defendant's Motion, Parsons Decl., Exh. 2, Rule 2.

2. There was some dispute between Plaintiff and Defendant as to whether the 1997 or 1998 Rules and Procedures applied. Defen-dant has acquiesced to Plaintiff's contention that the 1997 rules govern.

3. In the CarMax Dispute Resolution Agree-ment, the term "Associate" refers to former employees, current employees, and those seeking employment with CarMax and, there-fore, applies to Plaintiff.

agreement create a barrier to his ability to effectively vindicate his statutory rights; and (2) the agreement prevents him from vindicating his statutory rights by limiting the remedies he would otherwise be entitled to under the ADA and Title VII.

## A. Costs

The CarMax agreement requires the payment of a $75 filing fee by the Associate. Thereafter, Defendant is required to advance the remainder of the arbitration costs. The agreement does provide, however, that after an award is issued, Plaintiff would be responsible for one-half of the arbitration costs. If Defendant prevails, the arbitrator may require Plaintiff to pay Defendant's portion. However, if Plaintiff pays, or makes arrangements to pay, within 90 days after the award is issued, his costs are limited to three percent of his most recent annual earnings with Defendant. The agreement also provides that if Plaintiff prevails, the filing fee will be refunded and the arbitrator may require Defendant to pay Plaintiff's share of the costs. Finally, under the agreement, the arbitrator may award reasonable attorney fees to Defendant if the arbitrator finds that Plaintiff's claim is frivolous, presented in bad faith, or presented for an improper purpose, such as harassment. Conversely, the arbitrator has the discretion to award reasonable attorney fees to Plaintiff if he prevails.

When an arbitration agreement entails costs that a claimant would not face in a judicial forum, there is a question as to whether the prospective litigant will have adequate access to a forum where she may have the opportunity to vindicate her statutory rights. The Supreme Court, though not addressing costs specifically, has emphasized that so " 'long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.' " *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct.

1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)) (alteration in original). If costs under an arbitration agreement would prevent or deter prospective litigants from filing their claims and vindicating their statutory rights, the statute no longer serves its functions and the arbitration agreement is unenforceable.

Several courts have addressed cost sharing provisions in arbitration agreements and their effects on the ability of plaintiffs to vindicate their statutory rights in the arbitral forum. When costs were excessively high, or the agreement was unclear and costs had the potential to be excessively high, the agreements were held to be unenforceable. *See Shankle v. B–G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir.1999) (finding an agreement unenforceable that required a former employee to pay for one half of arbitration expenses, likely amounting to between $1,875 and $5,000, when the former employee could not afford such a fee. The court found that the agreement failed to provide an accessible alternative forum in which the former employee could resolve his statutory claims); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C.Cir. 1997) (holding that where the arbitration agreement was unclear as to whether arbitrator's fees are to be paid by the employer alone or by the parties together, and the parties stipulated that arbitrators' fees are commonly between $500 and $1,000, or more per day, that for the agreement to be enforceable, it would be construed to require the employer alone to bear the arbitrator's costs).

Not all cost provisions of arbitration agreements, however, render the agreements unenforceable. When an agreement provides assurances that prospective litigants will not be required to pay prohibitive costs, allowing them access to the arbitral forum for consideration of their federal statutory claims, the agreement

may be enforced. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1 (1st Cir.1999) (rejecting an argument that the New York Stock Exchange's arbitration procedures were unconscionable when arbitrating a Title VII claim simply because plaintiffs could be charged high forum fees, potentially $3,000 per day, noting that most successful plaintiffs were awarded arbitral fees and costs and that individual plaintiffs could bring the issue of unreasonable fees to a reviewing court); *Wright v. Circuit City Stores, Inc.,* 82 F.Supp.2d 1279 (N.D.Ala.2000) (holding that a $75 filing fee and a cap on the plaintiff's costs, if the plaintiff paid or made arrangements to pay within 90 days of the issuance of an award, did not prevent the plaintiff from effectively vindicating his rights).

█ Plaintiff has already paid the $75 filing fee for arbitration. Plaintiff has no other up-front costs that would prevent arbitration from proceeding. His most recent annual earnings at CarMax are $9,750.90, and he would, so long as he paid or made arrangements to pay costs, be able to limit his arbitration costs to $292.00.[4] Plaintiff has also paid the $150 filing fee to initiate this case in federal court, and does not indicate that he would be unable to pay, or make arrangements to pay, the $292.00, within 90 days after an arbitration award is issued. With respect to a payment of attorney fees, Plaintiff would be subject to similar conditions if his case continued in this Court. Under Fed. R.Civ.P. 11, Plaintiff could face sanctions, including attorney fees, if the court determined that his claims were filed for an improper purpose such as harassment or that his allegations and factual contentions had no evidentiary support.

In *Wright,* the court addressed identical cost sharing provisions in a Circuit City[5] arbitration agreement, finding that the provisions comported with the remedial purposes of section 1981 and the underlying principles of the FAA. Similarly, the CarMax agreement allows Plaintiff to limit his arbitration expenses, providing Plaintiff with minimum assurances that he will not be subject to prohibitive costs. He, therefore, has access to a forum where he may effectively vindicate his statutory rights through arbitration.

## B. Remedies

Rule 14 of the CarMax agreement limits the remedies Plaintiff could receive through arbitration to injunctive relief, full or partial back pay up to one year from the point the Associate knew or had reason to know of his claim, two years of front pay if reinstatement is impractical, compensatory damages, and punitive damages in an amount up to the greater of either the award of back and front pay or $5,000. Rule 14 also requires back pay awards to be reduced by interim earnings and public benefits received. Plaintiff argues that these remedies prevent him from fully vindicating his statutory rights.

For Plaintiff to effectively vindicate his statutory rights, the agreement must also allow him the full range of remedies provided by the ADA and Title VII. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *See also Wright v. Circuit City Stores, Inc.,* 82 F.Supp.2d 1279 (N.D.Ala.2000). Defendant does not dispute that Rule 14 is unenforceable because of its limits on Plaintiff's statutory remedies. *See Johnson v. Circuit City Stores, Inc.,* 203 F.3d 821 (4th Cir.2000) (unpub.) (noting that similar pro-

---

4. The amount of Plaintiff's earnings was provided by Defendant. Plaintiff has not presented evidence to the contrary.

5. Defendant is a Circuit City company.

visions in a Circuit City arbitration agreement, limiting remedies for a section 1981 claim, were unenforceable because they shielded the employer from the full force of the statute and prevented the plaintiff from fully vindicating her rights), *cert. denied,* 530 U.S. 1276, 120 S.Ct. 2744, 147 L.Ed.2d 1008 (2000). However, in Defendant's motion and in a recent supplement thereto, Defendant states that the rules and procedures have been automatically modified pursuant to a severability provision so as to permit Plaintiff to recover in arbitration all of the remedies to which he would be entitled under Title VII and ADA.

■ Rule 14 does not necessarily render the entire agreement unenforceable. Rule 18 of the agreement contains a severability clause which expressly preserves the remaining provisions of the agreement which are not in conflict with applicable law. Defendant's Motion, Parsons Decl., Exh. 2 at 9. It is a well settled principle of contract law that a provision of a contract may be severable if it is not so interwoven with other provisions as to be logically inseparable. *See, e.g., Connolley v. Harrison,* 23 Md.App. 485, 487–88, 327 A.2d 787 (1974), *cert. denied,* 274 Md. 727 (1975).

Plaintiff cites *Johnson v. Circuit City Stores,* 203 F.3d 821 (4th Cir.2000), *Paladino v. Avnet Computer Techs., Inc.,* 134 F.3d 1054 (11th Cir.1998), and *Graham Oil v. ARCO Prods. Co.,* 43 F.3d 1244 (9th Cir.1994), *cert. denied,* 516 U.S. 907, 116 S.Ct. 275, 133 L.Ed.2d 195 (1995), to support his argument that the entire arbitration agreement is unenforceable because of the limits on remedies. These cases, however, are not factually similar to the instant case. In *Johnson,* the Fourth Circuit declined to compel arbitration of statutory claims under a similar arbitration agreement. The agreement, a Circuit City arbitration agreement, also contained a provision which limited available remedies. Unlike this case, there was no indication that the agreement contained a severability clause and no analysis by the court concerning the severability of the offending provision.

In *Paladino,* the Eleventh Circuit affirmed the district court's decision not to compel arbitration of Title VII claims. The court declined to sever the remedy limiting provision of the arbitration agreement because it found that the provision tainted the entire agreement, rendering it unenforceable and not subject to judicial reformation. *Id.* at 1058. Apparently, the agreement did not contain a severability clause. The court reasoned that because the arbitration agreement did not adequately inform the employee that it covered statutory claims, and because its language could be read to limit damages available under Title VII, compelling arbitration was not appropriate. The language of the CarMax agreement at issue in this case, however, does expressly cover ADA and Title VII claims, and contains a severability clause expressly preserving the remaining provisions of the agreement which are not in conflict with applicable law.

Finally, in *Graham,* the Ninth Circuit addressed the severability of three unenforceable provisions contained in the defendant's arbitration agreement, where the agreement contained no severability clause. Two of the unenforceable provisions limited statutory remedies and the other limited the statute of limitations for the claim. In holding that the provisions were not severable, the court reasoned that the agreement was a highly integrated unit and that the offending provisions were a blatant attempt by the defendant to achieve through arbitration what Congress had specifically forbidden, rendering the entire arbitration agreement unenforceable. In the present case, in light of the severability clause and Defendant's written statement that it is not seeking to limit Plaintiff's statutory remedies, it does not appear that Defendant is attempting to circumvent Congressional action or public policy to deny Plaintiff's his opportunity to fully vindicate his rights.

■ In a factually similar case, the court held that a remedy-limiting provision identical to Rule 14 in a Circuit City arbitration agreement, which was very similar, if not identical to the CarMax agreement, was severable in accordance with a severability clause identical to Rule 18. *Wright v. Circuit City Stores, Inc.*, 82 F.Supp.2d 1279. Similarly, when this Court considers the terms and purpose of the CarMax agreement and specifically the severability clause, the remedy limitations in Rule 14 are not so interwoven with the other terms of the agreement as to make them not severable. Therefore, the Court finds that Rule 14 of the arbitration agreement should be modified in accordance with Rule 18 of the agreement to allow for the full range of remedies that Plaintiff is entitled to under the ADA and Title VII.[6] This solution conforms to the federal policy favoring arbitration, while ensuring that Plaintiff will have the opportunity to fully vindicate his rights. *See id.* at 1288.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration will be granted. Because the arbitration is to be final and binding, this case will be closed. A separate order will issue.

---

**6.** The arbitration agreement indicates that the arbitrator would have the discretion to award attorney fees to Plaintiff. Rule 13.4.b. In light of Defendant's acknowledgment that the arbitrator will have full authority to award Plaintiff all statutory remedies available under Title VII and the ADA and the severability of of-

fending portions of the agreement, the Court clarifies that Plaintiff is entitled to the same fees awarded to a prevailing plaintiff in a civil rights case. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).