# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 10, 2005 Decided July 1, 2005

No. 04-7089

TIMOTHY R. BOOKER,
APPELLANT

v.

ROBERT HALF INTERNATIONAL, INC.,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 01cv01127)

*Adam Augustine Carter* argued the cause for appellant. With him on the brief was *R. Scott Oswald.*

*Chevanniese Smith* argued the cause for appellee. With her on the brief was *Anita Barondes.*

Before: RANDOLPH and ROBERTS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the claimant to forgo substantive rights afforded under

the statute.  *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1481 (D.C. Cir. 1997).  But what should a court do when confronted with a statutory claim and an arbitration agreement that is unenforceable as written, because it contains a provision purporting to limit such rights: decline to enforce the agreement and allow the statutory claims to proceed in court, or sever the offensive provision and require arbitration under the remainder of the agreement?

In this case an employee sued his employer for racial discrimination under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.* ("DCHRA"), and the employer sought to compel arbitration pursuant to an arbitration clause in the employment agreement.  The arbitration clause was unenforceable as written because it precluded an award of punitive damages, which are available under the D.C. statute.  The existence of an express severability clause in the agreement, the fact that the agreement is otherwise valid and enforceable, and a "healthy regard for the federal policy favoring arbitration," *Gilmer*, 500 U.S. at 26 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), lead us to affirm the decision below, severing the ban on punitive damages and compelling arbitration.

## I.

From April 1996 to February 2001, Timothy R. Booker worked for Robert Half International, Inc. ("RHI").  Before starting his job at RHI, Booker signed an employment agreement containing the arbitration clause at the heart of this dispute.  The clause states in relevant part:

> Any dispute or claim arising out of or relating to Employee's employment or any provision of this Agreement . . . shall be submitted to arbitration pursuant to the com-

mercial arbitration rules of the American Arbitration Association. This Agreement shall be governed by the United States Arbitration Act. . . . The parties agree that punitive damages may not be awarded in an arbitration proceeding required by this Agreement.

Employment Agreement ¶ 18. The agreement also contained a severability clause, providing that "[t]he provisions of this Agreement are severable. If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of other provisions." *Id.* ¶ 13.

On April 24, 2001, Booker filed suit against RHI in District of Columbia Superior Court, alleging racial discrimination and wrongful constructive discharge in violation of the DCHRA. RHI responded with a letter requesting that Booker submit his claim to arbitration as required by the employment agreement. In subsequent negotiations with Booker's counsel over the structure of arbitral proceedings, RHI's attorney stipulated that arbitration would not bar an award of punitive damages, indicated that RHI would agree to "reasonable discovery," and suggested that the parties follow the American Arbitration Association ("AAA") employment arbitration rules because they provide "greater detail" on available discovery tools than the commercial rules specified in the agreement. May 16, 2001 Letter of Anita Barondes to R. Scott Oswald at 1; May 23, 2001 Letter of Anita Barondes to R. Scott Oswald at 1. When Booker nonetheless insisted on pursuing his claim in court, RHI removed the case to federal district court on the basis of diversity jurisdiction and moved to dismiss the complaint and compel arbitration pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq.*

Over the opposition of Booker and amicus curiae the Equal Employment Opportunity Commission, the district court granted

RHI's motion. The court analyzed the enforceability of the arbitration clause under the standards set forth in our decision in *Cole v. Burns International Security Services*, 105 F.3d at 1479–83. In *Cole*, we applied the Supreme Court's teaching in *Gilmer* that claims under antidiscrimination statutes may be subject to arbitration, so long as the claimant "effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Gilmer*, 500 U.S. at 28 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985) (alteration in original)). We held that the employee in *Cole* could be compelled to arbitrate his Title VII claim, noting that the arbitration agreement in that case "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs *or* any arbitrators' fees or expenses as a condition of access to the arbitration forum." 105 F.3d at 1482.

Booker argued for a different result in his case, asserting that his agreement with RHI did not provide for sufficient discovery, and noting that it plainly did not afford all the relief that would be available in court. The district court concluded that the AAA commercial arbitration rules specified in the arbitration agreement did provide for "more than minimal discovery," Mem. Op. at 13–15, but agreed with Booker that the bar on punitive damages was unenforceable. *Id.* at 16–17. It nevertheless declined Booker's invitation to strike down the arbitration clause in its entirety. Looking instead to the agreement's severability clause, District of Columbia contract law, and the federal policy favoring enforcement of agreements to arbitrate, the court concluded that the remainder of the arbitration clause was enforceable despite the invalid punitive damages provision. Accordingly, the district court severed the punitive

damages bar and compelled arbitration. *Id.* at 19–25. Booker appeals.

## II.

Recent Supreme Court decisions concerning the arbitrability of statutory claims make clear how we are to assess the assertion that arbitration should not be compelled because the terms of an arbitration agreement interfere with the effective vindication of statutory claims. The claimant in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), argued that she could not be compelled to arbitrate her claim under the Truth in Lending Act (TILA), because the arbitration agreement at issue was silent on the subject of fees and costs. The risk that she might have to pay prohibitive costs if she pursued her claim in arbitration, according to the claimant, interfered with the vindication of her TILA claim in the arbitral forum. *Id.* at 90. The Court rejected this argument. It recognized that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum," but held that an agreement's "silence" on the issue is, on its own, "plainly insufficient to render [the agreement] unenforceable." *Id.* at 90–91. The Court noted its "prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," and concluded that, by the same token, a party seeking to invalidate an arbitration agreement on the ground that the arbitration would be too expensive "bears the burden of showing the likelihood of incurring such costs." *Id.* at 91–92.

More recently, in *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003), the Court considered an argument that a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, could not be subjected to arbitration, because the pertinent arbitration agreement pre-

cluded punitive damages while RICO allows treble damages. The Court declined to construe the agreement and determine in advance whether the bar on punitive damages prohibited treble damages: "we should not, on the basis of 'mere speculation' that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved." 538 U.S. at 406–07 (quoting *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995)). The Court compelled arbitration, and left it for the arbitrator to decide in the first instance whether the agreement barred treble damages under RICO. The Court explained that this approach was consistent with its decision in *Vimar*, where it enforced a foreign arbitration clause after holding that "mere speculation" that the foreign arbitrator "might" apply foreign law that "might" turn out to be less favorable than the applicable United States statute did not "provide an adequate basis upon which to declare the relevant arbitration agreement unenforceable." *Pacificare*, 538 U.S. at 405 (citing *Vimar*, 515 U.S. at 541).

We take from these recent cases two basic propositions: *first*, that the party resisting arbitration on the ground that the terms of an arbitration agreement interfere with the effective vindication of statutory rights bears the burden of showing the likelihood of such interference, and *second*, that this burden cannot be carried by "mere speculation" about how an arbitrator "might" interpret or apply the agreement. We consider Booker's claims against this background.

**A.** Booker first renews his contention that the arbitration clause is unenforceable, quite apart from the punitive damages issue, because it does not provide for "more than minimal discovery." *See Cole*, 105 F.3d at 1482. Under the agreement, the AAA commercial arbitration rules are the governing

framework for any arbitration. With respect to discovery, those rules provide that "[a]t the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called." AAA, Commercial Dispute Resolution Procedures (effective Sept. 1, 2000), Rule 23(a).

Booker contrasts this provision with the corresponding discovery provision in the AAA employment arbitration rules, which we considered satisfactory in *Cole*. *See* 105 F.3d at 1480, 1482. Those rules gave the arbitrator "the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute." *Id.* at 1480 (quoting AAA, National Rules for the Resolution of Employment Disputes (effective June 1, 1996), Rule 7).

Booker also objects that the commercial rules leave the decision to hold an arbitration management conference up to the arbitrator, while the employment rules require such a conference; that the commercial rules do not require that the arbitrator hearing his claim be experienced in employment law, while the employment rules do; and that the commercial rules lack a counterpart to the provision in the employment rules which specifies that the "parties shall bear the same burdens of proof and burdens of producing evidence as would apply if [the claim] had been brought in court." AAA, National Rules for the Resolution of Employment Disputes (effective Jan. 1, 2001), Rule 22. Given the critical role shifting burdens play in adjudicating employment discrimination claims, *see, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), Booker contends that an arbitrator's unfamiliarity with or indifference to such issues may not only compromise his right to requisite

discovery, but also the practical availability of substantive protections under the DCHRA.

Although the AAA employment rules specify the discovery mechanisms available in somewhat greater detail than do the commercial rules, both sets of rules leave the decision about which discovery tools to use, and in what manner, to the discretion of the arbitrator. Booker is concerned that he will not have "a fair opportunity to present [his] claims," *Gilmer*, 500 U.S. at 31, because the arbitrator *might* provide inadequate discovery, *might* not order a needed conference, *might* assign burdens of production or proof that do not vindicate statutory rights, and so on. Under the approach set forth in *Pacificare*, *Green Tree*, and *Vimar*, such speculation about what *might* happen in the arbitral forum is plainly insufficient to render the agreement to arbitrate unenforceable. At no point does Booker claim that the agreement prohibits the arbitrator from affording what Booker asserts is required; RHI's offer to follow the AAA employment rules suggests there is no such ban. The relative silence of the commercial rules on the details of available discovery or other procedural questions cannot alone invalidate the agreement. *See Green Tree*, 531 U.S. at 92. To invalidate the agreement on the basis of Booker's speculation would reflect the very sort of "suspicion of arbitration" the Supreme Court has condemned as " 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.' " *Gilmer*, 500 U.S. at 30 (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481 (1989)). *See Green Tree*, 531 U.S. at 89 ("In considering whether [an] agreement to arbitrate is unenforceable, we are mindful of the FAA's purpose 'to reverse the longstanding judicial hostility to arbitration agreements.' ") (quoting *Gilmer*, 500 U.S. at 24).

**B.** The parties do not dispute that the arbitration agreement's bar on punitive damages is unenforceable as applied to Booker's claim under the DCHRA. *See, e.g.*, *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 & n.14 (5th Cir. 2003) (arbitration agreement's bar on punitive damages unenforceable in Title VII case). Booker contends, however, that the district court erred in severing the punitive damages provision and enforcing the remainder of the agreement. He first argues that severance and enforcement, as opposed to striking the arbitration clause as a whole, is inconsistent with the terms of the contract between the parties. *See* 9 U.S.C. § 2 (FAA leaves in place all protections "that exist at law or in equity for the revocation of any contract"); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (in deciding arbitrability, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts"). While acknowledging the employment agreement's severability clause, he notes that the agreement also stipulates that "[n]o provision of this agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought." Employment Agreement ¶ 16. According to Booker, his consent is required before RHI may change the arbitration provision by severing the ban on punitive damages, and then enforce the arbitration provision against him. At the very least, he contends, the severability clause and the waiver clause contradict each other, creating a contractual ambiguity we must construe against the drafter, RHI. *See, e.g.*, *Cole*, 105 F.3d at 1485.

Booker's argument incorrectly assumes that the waiver and severability clauses are incompatible. *See 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984) (contract "must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms"); Restatement (Second) of Contracts § 203(a) (1981) ("an

interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). Whatever the reach of waiver clause, here the parties agreed at the outset to allow the excision of any provision "found by any court of competent jurisdiction to be unreasonable and invalid." Employment Agreement ¶ 13. As a result, the district court's severance was a contingency contemplated by the parties at the time of formation, rather than a modification subject to the requirements of the waiver clause.

We reject for similar reasons Booker's argument that severance over his opposition was improper because District of Columbia law requires mutual assent for any modification of a contract. Because Booker and RHI both signed the contract with the severability clause, there is mutual assent to severance according to the terms of that clause. This is entirely consistent with District of Columbia law, which allows courts to sever provisions in violation of public policy, while enforcing the remainder of the agreement. *See EDM & Assocs., Inc. v. GEM Cellular*, 597 A.2d 384, 390 (D.C. 1991); *Ellis v. James V. Hurson Assocs., Inc.*, 565 A.2d 615, 617 (D.C. 1989).

Under the FAA, arbitration "is a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). Compelling Booker to arbitrate with the bar on punitive damages severed is entirely consistent with the intent to arbitrate he manifested in signing the employment agreement in the first place. As the Eighth Circuit recently explained in a similar case, "[w]e do not believe that the severance of the provision limiting punitive damages diminishes [the claimant's] contractual intent to arbitrate because excluding the provision only allows her the opportunity to arbitrate her claims under more favorable terms than those to

which she agreed." *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682–83 (8th Cir. 2001).

**C.** Booker next argues that enforcing the remainder of the arbitration clause contravenes the federal policy interest in ensuring the effective vindication of statutory rights. He contends that responding to illegal provisions in arbitration agreements by judicially pruning them out leaves employers with every incentive to "overreach" when drafting such agreements. If judges merely sever illegal provisions and compel arbitration, employers would be no worse off for trying to include illegal provisions than if they had followed the law in drafting their agreements in the first place. On the other hand, because not every claimant will challenge the illegal provisions, some employees will go to the arbitral table without all their statutory rights.

We have never addressed this issue, but Booker's argument — bolstered by support from the EEOC — has helped persuade some circuits to strike arbitration clauses in their entirety, rather than simply sever offending provisions. *See Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001); *Shankle v. B-G Maint. Mgmt. of Colo.*, 163 F.3d 1230, 1235 & n.6 (10th Cir. 1999); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1249 (9th Cir. 1994). Other circuits, however, have invoked the federal policy in favor of enforcing agreements to arbitrate to reject policy arguments like Booker's and uphold severance of illegal provisions. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003); *Gannon*, 262 F.3d at 682–83; *see also Hadnot*, 344 F.3d at 478 (severing bar on punitive damages in arbitration clause without citing federal policy).

The differing results may well reflect not so much a split among the circuits as variety among different arbitration agreements. Decisions striking an arbitration clause entirely

often involved agreements without a severability clause, *see, e.g.*, *Perez*, 253 F.3d at 1286, or agreements that did not contain merely one readily severable illegal provision, but were instead pervasively infected with illegality, *see, e.g.*, *Graham Oil*, 43 F.3d at 1248–49; *Hooters v. Phillips*, 173 F.3d 933, 938–39 (4th Cir. 1999). Decisions severing an illegal provision and compelling arbitration, on the other hand, typically considered agreements with a severability clause and discrete unenforceable provisions, *see, e.g.*, *Morrison*, 317 F.3d at 675; *Gannon*, 262 F.3d at 680.

A critical consideration in assessing severability is giving effect to the intent of the contracting parties. *See, e.g., Frankemuth Mut. Ins. Co. v. Escambia County*, 289 F.3d 723, 728–29 (11th Cir. 2002); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 722 (5th Cir. 1995). That was also the "preeminent concern of Congress in passing the [FAA]" — "to enforce private agreements into which parties had entered." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). *See Volt Info. Scis.*, 489 U.S. at 479 ("the FAA's primary purpose" was to "ensur[e] that private agreements to arbitrate are enforced according to their terms"). If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts, *see, e.g.*, *Graham Oil*, 43 F.3d at 1248–49, the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties. *Cf. NLRB v. Rockaway News Supply Co.*, 345 U.S. 71, 78 (1953) ("We do not . . . question that there may be cases where a forbidden provision is so basic to the whole scheme of a contract and so interwoven with all its terms that it must stand or fall as an entirety. But . . . [t]he features to which the Board rightly objects not only may be severed but are separated in the contract."). Thus, the more the employer overreaches, the less likely a court will be able to sever the provisions and enforce the

clause, a dynamic that creates incentives against the very overreaching Booker fears.

We agree with the district court that severing the punitive damages bar and enforcing the arbitration clause was proper here. Not only does the agreement contain a severability clause, but Booker identifies only one discrete illegal provision in the agreement. We have rejected his argument that the agreement does not allow adequate discovery, and Booker himself acknowledges that "the severance of one provision may be based on sound case law" and that "the District Court's decision to sever the punitive damages provision may be sound." Reply Br. of Appellant, at 4, 14. This one unenforceable provision does not infect the arbitration clause as a whole. The district court did not unravel "a highly integrated" complex of interlocking illegal provisions, *Graham Oil*, 43 F.3d at 1248, but rather removed a punitive damages bar that appears to have been grafted onto an intact and functioning framework, for the AAA commercial rules — incorporated by reference in the clause — already contain provisions on remedies that do not prohibit punitive damages. *See* Commercial Rules 43–48. Indeed, by severing a remedial component of the arbitration clause, the district court removed a provision generally understood as not being essential to a contract's consideration, and thus more readily severable. *See* 15 Corbin on Contracts § 89.10, at 659 (rev. ed. 2003); Williston on Contracts § 19:69, at 543 (4th ed. 1998) (citing Restatement (Second) of Contracts §§ 183 & cmt. a, 184). *See also Hadnot*, 344 F.3d at 478 (rejecting argument that bar on punitive damages in arbitration clause is integral to overall employment agreement and accordingly cannot be severed).

The *Graham Oil* decision, on which Booker relies, struck the entire arbitration agreement after noting that "the offensive provisions clearly represent an attempt . . . to achieve through arbitration what Congress has expressly forbidden." 43 F.3d at

1249; *see id.* ("severance is inappropriate when the entire clause represents an 'integrated scheme to contravene public policy' ") (quoting E. Allan Farnsworth, Farnsworth on Contracts § 5.8, at 70 (1990)). There is no evidence of that here. At the time the parties signed the agreement — almost a year before *Cole* — the law of this circuit was unclear as to whether bars on punitive damages in arbitration clauses were enforceable in this context. Moreover, the AAA did not promulgate the employment arbitration rules favored by Booker — and assented to by RHI in pre-litigation negotiations — until after the parties signed the employment agreement.

By invoking the severability clause to remove a discrete remedial provision, the district court honored the intent of the parties reflected in the employment agreement, which included not only the punitive damages bar but the explicit severability clause as well. In doing so, the court was also faithful to the federal policy which "requires that we rigorously enforce agreements to arbitrate." *Mitsubishi Motors*, 473 U.S. at 626 (citation omitted). For these reasons, and because Booker has failed to offer anything beyond "mere speculation" to suggest he would not be able effectively to vindicate his statutory claims in arbitration, *see Pacificare*, 538 U.S. at 406; *Vimar*, 515 U.S. at 541, the judgment of the district court is

*Affirmed.*