UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA (UE) and Locals 120, 125, 297, 332 and 1012 of United Electrical, Radio and Machine Workers of America (UE), Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, Defendant.

United States District Court
S. D. New York.
Sept. 13, 1962.

Donner, Perlin & Piel, New York City, for plaintiffs; Robert Z. Lewis, New York City, of counsel.

Gilbert & Segall, New York City, for defendant; Harold R. Tyler, Jr., New York City, of counsel.

FEINBERG, District Judge.

Plaintiffs, United Electrical, Radio and Machine Workers of America and five of its locals (collectively referred to herein as "the Union") have brought suit under Section 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185, against General Electric Company ("the Company") to compel arbitration of various grievances. Both the Union and the Company have moved for summary judgment. The issues before the Court are (1) whether the collective bargaining agreement between the parties, dated April 2, 1956 ("the 1956–1960 agreement") provides for compulsory arbitration and, if so, (2) whether the grievances brought by the Union fall within the scope of the arbitration clause. For the reasons indicated below, both motions for summary judgment are denied.

The pertinent portions of the 1956–1960 agreement are as follows:

"ARTICLE XVI

"ARBITRATION

"1. Any grievance which involves the interpretation or application of this Agreement, and which remains unsettled after having been fully processed pursuant to the provisions of Article XV, shall be submitted to arbitration upon request of either the Union or the Company provided such request is made within 90 days after the decision of the Company has been given to the Un-

ion pursuant to Article XV, Section 1(c). In each case, the arbitrator shall be selected and the arbitration proceeding conducted *pursuant to procedures mutually satisfactory to the Company and the Union.*

"2. If the Union requests arbitration of a grievance in compliance with the provisions of this Article, *and the Company fails within ten days to agree that such grievance is one involving interpretation or application of this Agreement, or fails to agree upon procedures for selecting an arbitrator and conducting the arbitration,* the provisions of Article XVII, Section 1(a) of this Agreement shall not be applicable to action taken in connection with such grievance by the Union or any Local concerned.

"3. The award of an arbitrator selected upon any grievance submitted to him in accordance with the provisions of this Article shall be final and binding upon the Company, the Union and all Locals concerned. The arbitrator shall have no authority to add to, detract from, or in any way alter the provisions of this Agreement. In addition, it is specifically agreed that the establishment of a wage rate or job classification is subject to arbitration only by mutual agreement of the Union and the Company and it is further agreed that no provision of the 'Pension and Insurance Agreement' referred to in Article XXVII shall be subject to arbitration.

## "ARTICLE XVII

### "STRIKES AND LOCKOUTS

"1. The Union or Local or their representatives will not cause or sanction their members to cause or take part in any strike, sitdown, stay-in, or slowdown or other stoppage of work, in any of the Works of the Company coming within the terms of this Agreement:

"(a) In connection with any grievance or dispute until all the bargaining steps mentioned in the Grievance Procedure shall have been employed without success *and the parties have failed to agree to arbitrate the matter; or the parties have failed to submit the grievance or dispute to arbitration;*

"(b) In connection with any request for modification or additions to this Agreement, or in connection with general economic issues including a request for general revision of wages, except in accordance with the provisions of Article XXVIII and Article XXX.

"2. The Company will not lock out any employee or transfer any job under dispute from the local Works nor will the local Management take similar action while a disputed job is under discussion at any of the steps of the grievance Procedure set forth in Article XV, *or if the parties agree to arbitrate the matter."* (Emphasis added.)

The Company contends that the above quoted contract provisions, and, in particular, the underlined portions, do not provide for compulsory arbitration at all, but instead contemplate a case by case agreement of the parties as to whether a grievance which has gone through the various steps of the grievance machinery should be submitted to final arbitration. In support of its position, the Company relies not only on the language of the agreement, but also on the past practice of the parties, collective bargaining history, and statements attributed to representatives of the Union. The Company has submitted an affidavit of its chief negotiator on these matters, which states, among other things, the following: the Union's present lawyers have twice this year stated in briefs filed elsewhere involving matters between the parties here that the 1956–1960 agreement limited arbitration only to cases in which there was mutual agreement; the Union rejected a compulsory arbitration clause offered to it in the negotiations leading to the 1956–1960 agreement; and in the 1960 negotiations, a Union representative

stated that the Union wished to have compulsory arbitration of grievances in the future rather than the case by case agreement for arbitration utilized in the past.

The Union argues that the quoted provisions provide for compulsory arbitration. It contends that in interpreting these provisions only the language of the contract is relevant, and that the matters covered in the Company's affidavit are not material. It has, however, submitted a reply affidavit of one of its negotiators which is ambiguous, but which, viewed in the light most favorable to the Union, has the effect of denying the Company's factual assertions.

■■ The law is clear that where the language of the contract is ambiguous, the court can look to such extrinsic evidence as the parties' conduct, the statements of its representatives, and past practice to aid in interpretation. See Oddie v. Ross Gear & Tool Co., 305 F.2d 143 (6 Cir. 1962); Warner-Lambert Pharmaceutical Co. v. John J. Reynolds, Inc., 178 F.Supp. 655, 667 (S. D.N.Y.1959), aff'd per curiam, 280 F.2d 197 (2 Cir. 1960); Rotberg v. Dodwell & Co., 152 F.2d 100 (2 Cir. 1945); 3 Corbin, Contracts § 558 (rev. ed. 1960). A close reading of the pertinent provisions of the 1956–1960 agreement indicates that the language is ambiguous at best. It is true that the first paragraph of Article XVI does provide for a broad submission of unsettled grievances to arbitration. However, the underlined language in the portions quoted above also indicates that agreement of the parties is required before arbitration can be held. Under the circumstances, exploration of the matters referred to in the conflicting affidavits would be most helpful to proper interpretation. Therefore, since there appear to be genuine issues as to material facts, under the usual construction of

Rule 56, Fed.R.Civ.P., 28 U.S.C.A., that would be the end of the inquiry and the motions for summary judgment would be denied. Doehler Metal Furniture Co. v. United States, 149 F.2d 130 (2 Cir. 1945); Wilner v. United States, 195 F. Supp. 786 (S.D.N.Y.1961).

■ However, the Union contends that, under the recent Steel Workers cases,[1] because the contract involved here is a collective bargaining agreement and the issue is arbitrability of certain grievances thereunder, special considerations apply which compel the Court to reach a contrary result. But a close reading of these and other recent Supreme Court cases does not indicate that it is improper to look to extrinsic evidence to determine the meaning of an ambiguous contract—even a labor contract. Thus, in Drake Bakeries, Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 260, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), it is quite clear that the Court relied in part upon the past practice of one of the parties in interpreting the arbitration clause before it.

■ The Union further contends that under the Steel Workers cases, if the question of arbitrability is in doubt, then all doubts must be resolved in favor of arbitrability. These cases unquestionably stand for the proposition, *inter alia,* that where there is a concededly compulsory arbitration clause, doubts as to whether an asserted dispute falls within the scope of that clause should be resolved in favor of arbitrability. It is questionable, however, whether this policy applies with equal force here. One of the basic considerations underlying the Steel Workers cases was that there the parties had already shown a desire to have at least some claims decided by an arbitrator rather than a court. No such desire can be assumed here since the issue is whether the crucial clauses provide

---

1. United Steel Workers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steel Workers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409

(1960); United Steel Workers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). See Hays, The Supreme Court and Labor Law October Term, 1959, 60 Col.L.Rev. 901 (1960).

for compulsory arbitration at all, i. e. whether the parties agreed ahead of time to arbitrate anything.[2]

Assuming, however, that the strong policy in favor of arbitrability applies even when the question is whether there is a compulsory arbitration clause in the first place, I do not believe that the Steel Workers cases compel the granting of summary judgment on this record. The affidavits appear to raise issues of fact as to matters which I believe, even under the Steel Workers cases, are proper for the court to look into in construing an ambiguous contract. The policy in this Circuit of denying summary judgment where there are genuine fact issues is strong, see Doehler and Wilner, supra, and, at this procedural stage, granting judgment on this record would negate that policy. It is possible to respect that policy without necessarily conflicting with the presumption of arbitrability recognized by the Steel Workers cases. This can be achieved by denying the motions and thereafter receiving evidence at trial and resolving the factual issues (e. g., was the Union offered a compulsory arbitration clause in the negotiation leading to the 1956–1960 agreement; what was the substance of that clause; did the Union reject such clause, etc.?). It may be that at that time a presumption favoring arbitrability should be applied in either or both of the following steps: (1) in finding the facts at the end of the trial, and (2) in interpreting the contract after the factual issues are resolved, although I am not deciding those questions now. But in any event, the possibility of applying the presumption later

does not mean that genuine issues of fact should be decided now on the motions for summary judgment.

Because I feel there are genuine issues of fact material to the question of the compulsory nature of the arbitration clause in this case, the motions for summary judgment are denied. On this view of the case, it is unnecessary to reach the issue of whether, if the arbitration clause is compulsory, the particular claims involved fall within its scope. The Union's motion and the Company's motion are both denied and the case should be tried expeditiously. Settle order on notice.

2. The Supreme Court has recognized that a collective bargaining agreement which has grievance machinery may nevertheless not have a compulsory arbitration scheme. Thus, in the Warrior case, the Supreme Court quoted with approval the following description of various types of collective bargaining agreements (363 U.S. at 579 n. 5, 80 S.Ct. at 1351):

"No-strike pledges may also be lifted after compliance with specified procedures. *Some contracts permit the union to strike after the grievance procedure has been exhausted without a*

settlement, and where arbitration is not prescribed as the final recourse. Other contracts permit a strike if mediation efforts fail, or after a specified cooling-off period." (Emphasis added.) See also Chauffeurs Union v. Yellow Transit Freight Lines, 370 U.S. 711, 82 S.Ct. 1293, 8 L.Ed.2d 792 (1962), in which Justices Brennan, Douglas and Harlan, in a separate concurring opinion, noted that the collective bargaining agreement in that case did not bind either party to arbitrate any dispute.