**HUMBLE OIL & REFINING COMPANY, a Delaware corporation, Plaintiff,**

v.

**LOCAL UNION 866, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization, Defendant.**

**No. 67 Civ. 116.**

United States District Court
S. D. New York.

July 20, 1967.

4. S.C., 156 S.E.2d 627, opinion filed July 12, 1967.

Wolf & Burrell, New York City, for plaintiff; Stryker, Tams & Dill, Newark, N. J., of counsel.

Caesar C. Guazzo, New York City, for defendant.

## OPINION

BONSAL, District Judge.

Plaintiff, Humble Oil & Refining Company (the Company), instituted this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate a labor arbitration award dated November 18, 1966 made by a three member Board of Arbitration (the Board), or, in the alternative, to modify the award. Defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 866 (the Union), and the Company each move for summary judgment pursuant to Rule 56, F.R.Civ.P., and the Union moves to dismiss the complaint for improper service of process pursuant to Rule 12(b), F.R.Civ.P.

On January 22, 1965, following a strike at the Company's Bayway (N.J.) Refinery that began in October 1964, the Com-

pany and the Union executed a collective bargaining agreement (the collective bargaining agreement). Articles 21 and 22 provided for the arbitration of grievances by a three member Board of Arbitration, one member selected by the Company (the Company Member), one member selected by the Union (the Union Member), and the third member (the Impartial Member) selected under the rules and regulations of the American Arbitration Association or by agreement of the Company and the Union. Article 21–2 defined a "grievance" as "a claim by an employee or the Union that the Company has violated an express provision of this Agreement." On the same day, the Company and the Union executed a Special Agreement which provided procedures for returning employees to work after the strike, including a special early retirement and layoff program. The Special Agreement recited that these procedures were agreed upon in view of the notice given the Union by the Company that a "surplus" of no more than 325 employees existed in the bargaining unit represented by the Union. As of January 23, 1965 the 325 had been reduced to 170 by the voluntary resignation or retirement of 155 employees and the Company estimated that there would be 60 to 70 additional voluntary resignations or retirements. On January 23 the Company sent letters to the 170 employees having the lowest seniority notifying 106 of them whose seniority dated from after 1948 that they would be involuntarily laid off, and notifying the other 64 whose seniority dated from 1948 or earlier that they would be informed within 14 days whether they would be involuntarily laid off. On January 26 the 106 who were notified that they would be involuntarily laid off signed termination papers and each was paid a severance allowance of not less than $7,500 in accordance with the Special Agreement. The deadline for voluntary resignations and retirements expired on February 5, 1965, but during the week beginning February 1 the Company found that there had been more voluntary resignations and retirements than the Company had estimat-

ed and the Company called back some of the 106 who had received severance allowances, stipulating that the severance allowances be returned to the Company. Twenty of the employees called back refused to return their severance allowances and were not reemployed, and 28 who returned their severance allowances went back to work.

The Union contended that the Company should not have required the employees who were called back to return their severance allowances and that, 1) the Company should repay the severance allowances to the 28 employees who returned them; 2) the Company should offer reinstatement and award back pay to the 20 employees who were recalled but refused to return their severance allowances and were not reemployed. The Union demanded arbitration under the arbitration provisions of the collective bargaining agreement, and submitted the following issue to the Board of Arbitration: "Did the Company violate the agreement between the parties in requiring the return of severance allowance from employees laid off and recalled to work? If so, what shall the relief be?"

At the outset of the hearings before the Board of Arbitration which were conducted during the period July 1965 to March 1966, the Company contended that the issue presented to the Board was not arbitrable because it involved a dispute under the Special Agreement which did not contain a provision for arbitration. The Board decided that "the issue was arbitrable and that the Special Agreement was enforceable through the grievance and arbitration provisions of the Contract [the collective bargaining agreement]." Thereafter, the Company and the Union presented evidence on the merits of the dispute and on November 18, 1966 the Board made its award (the Company Member dissenting) that "The Company violated the agreement between the parties in requiring return of severance allowances from employees laid off and recalled to work." The Board (with the Company Member dissenting) awarded repayment of the severance allowances

to the 28 employees who had returned their allowances to the Company, and (with the Union Member dissenting), denied the claim for reinstatement and back pay for the 20 employees who refused to return their severance allowance and were not reemployed.

The Company contends that the award of the Board should be vacated because the dispute submitted to the Board concerned the Special Agreement, which contains no provision for arbitration, or, in the alternative, contends that the award should be modified or vacated because under Article 22–2 of the collective bargaining agreement, the remedy, an award of severance allowances, exceeded the power of the Board. The Union contends that summary judgment should be granted in its favor because: 1) the Board expressly held that the dispute was arbitrable and that determination is final and binding upon the Company; 2) the Company waived judicial determination of arbitrability by participating in the arbitration proceedings on the merits; 3) the dispute was arbitrable under the collective bargaining agreement. In support of its motion to dismiss the Company's complaint, the Union contends that under Rule 4(d) (3), F.R.Civ.P., it was not properly served with process and that jurisdiction over it has not been obtained in New York.

■ There is no merit in the Company's contention that under Article 22–2 of the collective bargaining agreement the Board exceeded its power by awarding severance allowances. Article 22–2 provides in part that, "In the case of compensatory awards to an individual the arbitrator may award a sum of money not to exceed the individual's normal earnings or other premiums that he would regularly earn. The arbitrator shall not have the power to inflict a punitive award against the Company." If the dispute before the Board was arbitrable, then the relief awarded was within the Board's power because the relief was not punitive, and if it was compensatory, it did not exceed "normal earnings or other premiums." The Company was required to repay to the employees allowances already paid by the Company which, in the Board's view, the Company wrongfully required the employees to return.

■ The Company is not bound, however, by the Board's determination that the dispute submitted to it was arbitrable. The question of arbitrability is for the Court to decide. E. g., Torrington Company v. Metal Products Workers Union Local 1645, 347 F.2d 93 (2d Cir.), cert. denied, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965). It does not appear that the Company and the Union agreed to leave the question of arbitrability to the Board (compare Metal Products Workers Union, Local 1645 v. Torrington Company, 358 F.2d 103 (2d Cir. 1966); Electric Specialty Co. v. Local 1069, 222 F.Supp. 314 (D. Conn.1963)), and the Company did not waive its right to a judicial determination of the question of arbitrability by participating in the arbitration proceedings on the merits. See District 50, United Mine Workers of America v. Pittston Co., 210 F.Supp. 781 (N.D.W.Va. 1962); Amalgamated Meat Cutters v. Penobscot Poultry Co., 200 F.Supp. 879 (D.Me.1961); cf. Todd Shipyards Corp. v. Industrial Union of Marine & Shipbuilding Workers, of America, Local 15, 242 F.Supp. 606, 609 (D.N.J.1965); Acme Markets, Inc. v. Retail Clerks International Union, Local 1357, 235 F. Supp. 814, 815 n. 3 (E.D.Pa.1964), aff'd per curiam, 344 F.2d 330 (3d Cir. 1965); see also Torrington Company v. Metal Products Workers Union Local 1645, 362 F.2d 677 (2d Cir. 1966). But see, Ficek v. Southern Pacific Co., 338 F.2d 655 (9th Cir. 1964), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965); Arbitration and the Courts, 58 Nw.U.L.Rev. 466, 523 n. 13 (1963). A finding of waiver from the Company's participation in arbitration would conflict with the policy favoring judicial review after an arbitration award has been made so that "the court receives the

benefit of the arbitrator's interpretive skills as to the matter of his contractual authority." Torrington Company v. Metal Products Workers Union Local 1645, 362 F.2d 677, 680–681 n. 6 (2d Cir. 1966). At trial, the Union may be able to prove facts sufficient to support a finding of waiver, but such a finding cannot be made on the papers before the Court on these motions for summary judgment. See, United Steelworkers of America, AFL–CIO v. Northwest Steel Rolling Mills, Inc., 324 F.2d 479 (9th Cir. 1963); compare Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 809 (2d Cir.), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); Woolley v. Eastern Air Lines, Inc., 250 F.2d 86, 91 (5th Cir. 1957), cert. denied, 356 U.S. 931, 78 S.Ct. 773, 2 L.Ed.2d 761 (1958).

■ There are also issues of fact on the question of arbitrability which can only be determined following a trial. See, Torrington Company v. Metal Products Workers Union Local 1645, 347 F.2d 93 (2d Cir.), cert. denied, 382 U.S. 940, 86 S.Ct. 394 (1965); cf. United Electrical, Radio & Machine Workers of America v. General Electric Co., 208 F. Supp. 870 (S.D.N.Y.1962). The collective bargaining agreement and the Special Agreement have to be interpreted, and here "extrinsic evidence as the parties conduct, the statements of its representatives, and past practice * * *" may be relevant. United Electrical, Radio & Machine Workers of America v. General Electric Co., supra, at 872; see, Communications Workers of America v. Pacific Northwest Bell Telephone Co., 337 F.2d 455 (9th Cir. 1964); compare International Union of Electrical, Radio & Machine Workers v. Westinghouse Electric Corp., 228 F.Supp. 922 (S.D.N.Y. 1964).

■ In support of its contention that the dispute concerns only the Special Agreement, the Company argues that under the Special Agreement it had an implied right to rescind a layoff to keep from terminating the employment of more than 325 employees. The Special Agreement does not provide for arbitration and does not expressly incorporate the arbitration provisions of the collective bargaining agreement. Article 27–3 of the collective bargaining agreement, which provides that "This Agreement * * * is now the only Agreement between the parties, except for the Special Agreement executed concurrently herewith, * * *" is some indication that the parties did not intend to incorporate the provisions of the collective bargaining agreement into the Special Agreement. In addition, the provision for arbitration where a claim is made that "the Company has violated an express provision of this Agreement," is not as broad as the arbitration clause sometimes found in collective bargaining agreements providing that grievances involving the interpretation or application of the agreement shall be submitted to arbitration. Compare International Union of Electrical, Radio & Machine Workers v. General Electric Co., 332 F.2d 485 (2d Cir.), cert. denied, 379 U.S. 928, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964); Local 12298, District 50, United Mine Workers v. Bridgeport Gas Co., 328 F.2d 381 (2d Cir. 1964); International Union of Electrical, Radio & Machine Workers v. Westinghouse Electric Corp., 228 F.Supp. 922 (S.D.N.Y.1964).

■ On the other hand, the Special Agreement provides in Par. 5 that "The designation of employees to be laid off shall be made in accordance with the collective bargaining agreement." and provides in Par. 5F that "for the purpose of recall rights, all employees laid off pursuant to the provisions contained herein shall be considered as having been laid off on the same date, namely, January 25, 1965." Recall rights are not covered in the Special Agreement but are dealt with in Article 30 of the collective bargaining agreement. These provisions in the Special Agreement may support

286

a determination that the dispute here as to layoffs and recall involves the collective bargaining agreement and is arbitrable under that agreement even if the dispute also involves the Special Agreement.

Accordingly, since there are issues of fact to be resolved at trial, the motions by the Company and the Union for summary judgment are denied.

 The Union also moves to dismiss for improper service of process and for lack of jurisdiction in New York. Under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, jurisdiction can be obtained over a union "(c) * * * (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." and "(d) The service of summons, * * * or other legal process * * * upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization." An affidavit of service and a return of service on file with the Court indicate that a summons and complaint were served on January 12 and January 16, 1967 at the Union's offices in Passaic, New Jersey. On February 16, 1967 a summons and complaint were served on Eugene Grall while he was at Stapleton Anchorage, New York Bay on Union business, apparently as an inspector during an election conducted by the National Labor Relations Board aboard the ESSO LEXINGTON. If Mr. Grall was an officer or agent of the Union, and was acting for the Union on February 16, 1967 at Stapleton Anchorage, jurisdiction over the Union was obtained in New York. Since this may present an issue of fact, the Union may raise the issue of jurisdiction at trial if it is so advised.

The motions by the Company and the Union for summary judgment are denied, and the motion by the Union to dismiss the complaint is denied without prejudice to renewal at trial.

It is so ordered.