823 So.2d 1237 (2001)
CAVALIER MANUFACTURING, INC., d/b/a Buccaneer Homes of Alabama, Inc.
v.
Angela JACKSON and Shawyn Jackson.
1000391.
Supreme Court of Alabama.
April 13, 2001.
Specially Concurring Opinion on Denial of Rehearing June 1, 2001.
Opinion on Return to Remand October 5, 2001.
*1239 John R. Bradwell of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for appellant.
James G. Bodin of McPhillips, Shinbaum & Gill, L.L.P., Montgomery, for appellees.
HOUSTON, Justice.
Shawyn Jackson and Angela Jackson sued Cavalier Manufacturing, Inc., d/b/a Buccaneer Homes of Alabama, Inc. (hereinafter "Cavalier"), alleging negligence, breach of contract, breach of express and implied warranties, and fraud, all in connection with the plaintiffs' purchase of a mobile home. The plaintiffs complained that the mobile home they purchased from Cavalier contained manufacturing defects. Cavalier filed a motion to dismiss, or in the alternative, a motion to compel arbitration of the plaintiffs' claims, pursuant to an arbitration clause contained in the "acknowledgment and agreement" signed by the plaintiffs and by a representative of Cavalier. The trial court, without making any findings of fact, denied Cavalier's motion. Cavalier appeals.[1] We remand with instructions.
The arbitration clause in the acknowledgment and agreement reads:
"10. ARBITRATION. All parties hereto acknowledge and agree that this Agreement and the performance of the transactions contemplated hereby evidence transactions which involve a substantial nexus with interstate commerce. Accordingly, any dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties... (including any dispute, controversy or claim relating to the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties ... shall be governed by the Federal Arbitration Act and shall be settled by arbitration in accordance with the Commercial Arbitration Rules *1240 of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
". . . .
"The parties understood and agree that the arbitrator shall have all powers provided by law, and may award any legal or equitable relief, including, without limitation, money damages, declaratory relief, and injunctive relief; provided, however, that the arbitrator shall have no power to award punitive damages or other damages not measured by the prevailing party's actual damage. EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO A JURY TRIAL WITH RESPECT TO ANY CONTROVERSY BETWEEN THE PARTIES...."
(Emphasis in original.)
A direct appeal is the appropriate procedure by which to seek review of a trial court's order denying a motion to compel arbitration. Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 745 (Ala.2000). This Court conducts a de novo review of the trial court's denial of the motion to compel arbitration. Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1171 (Ala.1999).
Section 8-1-41(3), Ala.Code 1975, prohibits specific enforcement of "[a]n agreement to submit a controversy to arbitration." However, § 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides:
"[A] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
This Court has recognized that under this section the FAA preempts conflicting state law where an arbitration agreement is contained in a contract that involves interstate commerce. Ex parte Jones, 628 So.2d 316 (Ala.1993); Ex parte Phelps, 672 So.2d 790 (Ala.1995); see Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Thus, an arbitration provision in a contract that, in fact, involves interstate commerce is put "`on the same footing' as other terms of a contract." Phelps, 672 So.2d at 793 (quoting Allied Bruce Terminix, 513 U.S. at 275, 115 S.Ct. 834).
We first address the question whether the FAA applies to the arbitration clause contained in the "acknowledgment and agreement" the plaintiffs signed when they purchased the mobile home. We note that nothing in the record suggests, and that the plaintiffs do not allege, that the acknowledgment and agreement itself, entered into between the plaintiffs and Cavalier, is invalid or unenforceable. Therefore, the FAA will apply to the arbitration clause if the "acknowledgment and agreement" is a contract "involving interstate commerce in fact, so as to be within Congress's power to regulate under the Commerce Clause." Coastal Ford, Inc. v. Kidder, 694 So.2d 1285, 1287 (Ala.1997).
This Court, in Southern Energy Homes, Inc. v. McCray, 788 So.2d 882 (Ala.2000), stated that "[a]n Alabama resident's purchase of a new mobile homeeven one manufactured in Alabamacan be a transaction that substantially affects interstate commerce." Whether it is such a transaction depends on the facts of the purchase, including, among others, such facts as the source of the mobile home or its components. In McCray, an Alabama resident purchased a mobile home that had been *1241 manufactured by Southern Energy Homes, a Delaware corporation with manufacturing facilities in Alabama. 788 So.2d at 883 n. 1. The homes manufactured in Alabama were constructed with parts shipped to the Alabama plants from out-of-state suppliers. Id. at n. 1. This Court held that this evidence indicated that the purchase of the mobile home substantially affected interstate commerce. Id.
Similarly, the Jacksons' purchase of their mobile home from Cavalier substantially affected interstate commerce. Cavalier is a Delaware corporation doing business in Marion County, Alabama, as Buccaneer Homes. According to the record, Buccaneer Homes, the company that constructed the plaintiffs' home, manufactures mobile homes with components furnished by out-of-state suppliers. Therefore, we conclude that this transaction substantially affected interstate commerce, and that the FAA does apply to make the arbitration provision in this case enforceable. We now address the arguments Cavalier makes on appeal.
Cavalier argues that the trial court erred in denying the motion to compel arbitration, because, it says, the trial court misapplied the current caselaw on arbitration. Specifically, Cavalier argues: (1) that the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., does not prohibit enforcement of an arbitration clause in an agreement, other than an arbitration clause in a warranty; (2) that the financial hardship the plaintiffs claimed does not void the arbitration agreement; (3) that the plaintiffs' tort claim is subject to binding arbitration; and (4) that the arbitration agreement is valid even though it precludes the recovery of punitive damages.
With respect to the first argument, Cavalier contends that the Magnuson-Moss Act does not prohibit the enforcement of arbitration clauses in agreements other than warranties.[2] The plaintiffs, in their response brief on appeal, argue that the Magnuson-Moss Act provides that the supplier of a consumer product may establish a mandatory dispute-settlement procedure only if the terms of the settlement are included in a warranty. However, a review of the language of the Act indicates that the Act governs only warranties and no other documents. Thus, its provisions concerning arbitration clauses, 15 U.S.C. § 2310, are inapplicable to this case, which involves an agreement that is not a warranty.
Regarding the second argument, Cavalier argues that the financial hardship the plaintiffs claim does not void the arbitration agreement. The plaintiffs, in their response brief on appeal, argue that the arbitration clause is unenforceable because, they say, they cannot afford the cost of arbitrating this dispute. In Green Tree Financial Corp. v. Wampler, 749 So.2d 409 (Ala.1999), this Court wrote:
"Because the general principles of Alabama contract law do not excuse performance on grounds of financial hardship, we cannot allow a party's poverty, standing alone and independent of other considerations justifying a finding of unconscionability, to constitute a defense to enforcement of an arbitration agreement."
749 So.2d at 416.
Although the record shows that Angela Jackson was disabled and unemployed *1242 when the trial court denied Cavalier's motion to compel arbitration, the record contains no evidence of the finances of Shawyn Jackson, the other plaintiff in this case. Furthermore, the record contains no information about how much arbitration would cost the plaintiffs. The plaintiffs, in their response brief on appeal, state approximate dollar amounts; however, their calculations appear to be nothing more than mere speculation. "The `risk' that [the plaintiffs] will be saddled with ... costs is too speculative to justify the invalidation of an arbitration agreement." Palm Harbor Homes, Inc. v. Turner, 796 So.2d 295, 297 (Ala.2001) (quoting Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000)). Therefore, the plaintiffs have failed to show that financial hardship should prohibit enforcement of the arbitration provision against them.
Finally, as to the third and fourth arguments, Cavalier avers that all the plaintiffs' claims, including their tort claims, are subject to the arbitration clause. The plaintiffs, in their response brief on appeal, argue that their fraud claim is not arbitrable because, they say, the arbitration clause denies them an adequate remedy by prohibiting the arbitrator from awarding punitive damages.
A court reviewing a motion to compel arbitration must determine "`whether the language or "scope" of the arbitration clause is broad enough to encompass the claims sought to be arbitrated.'" Kidder, supra, at 1288 (quoting Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 103 (Ala.1995)). Moreover, a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract. Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So.2d 159, 165 (Ala.1999). The question whether an arbitration clause in a contract requires arbitration of a given dispute remains a matter of state-law contract interpretation. 684 So.2d at 107. This Court, in Homes of Legend, Inc. v. McCollough, supra, explained the general Alabama rules of contract interpretation:
"[T]he intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning."
McCollough, supra, at 746. (Citation omitted.)
Relying on this canon of contract interpretation, we hold that the fraud claim is arbitrable under the provision. The language of the arbitration provision is clear and unambiguous: "[A]ny dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties" shall be arbitrated. The plain meaning of the phrase "any claim" includes the fraud claim. Furthermore, the question whether Cavalier fraudulently misrepresented the condition of the mobile home to the plaintiffs is a "dispute ... which has arisen ... between the parties" regarding a "past ... dealing[] between the parties" (the plaintiffs' purchase of a mobile home from Cavalier in 1998).
The plaintiffs, in their response brief on appeal, argue that the arbitration clause is unenforceable because it does not provide relief equivalent to the remedies that would be available in the trial court. The arbitration provision specifically prohibits the arbitrator from awarding punitive damages ("the arbitrator shall have no power to award punitive damages"). However, the same provision requires that challenges to the validity of the arbitration clause are to be decided by the arbitrator *1243 ("any dispute ... relating to the validity of this arbitration clause ... shall be settled by arbitration"). Thus, under the terms of the arbitration clause, the arbitrator determines the validity of the clause.
However, as this Court explained in American General Finance, Inc. v. Branch, 793 So.2d 738 (Ala.2000), issues concerning the validity of arbitration clauses are to be decided by the court:
"Nevertheless, `a determination that, by the terms of the arbitration clause, the arbitrator is to decide issues of arbitrability does not end the inquiry.' Green Tree Fin. Corp. v. Wampler, 749 So.2d 409, 413 (Ala.1999). `Where the attack is addressed to the arbitration clause itself, as opposed to the contract as a whole, the court, and not the arbitrator, resolves the issue.' Id. Thus, the threshold `issue of unconscionability of an arbitration clause is a question for the court and not the arbitrator.' Id. at 415 (emphasis added). See also Ex parte Napier, 723 So.2d 49 (Ala.1998); Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 41 (Ala.1998) (Lyons, J., concurring specially)."
793 So.2d at 748. The record indicates that the trial court never made a determination about the validity of the clause.
Therefore, we remand this case with instructions for the trial court to determine whether the arbitration clause is valid even though it prohibits the arbitrator from awarding punitive damages. The trial court shall make a return to this Court within 30 days from the release of this opinion.
REMANDED WITH INSTRUCTIONS.
SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs specially.
MOORE, C.J., dissents.
LYONS, Justice (concurring specially).
I concur. See my special concurrence on application for rehearing in American General Finance, Inc. v. Branch, 793 So.2d 738 (Ala.2000), dealing with when the court, as opposed to the arbitrator, decides issues concerning the validity of an arbitration clause.
MOORE, Chief Justice (dissenting).
I would like to focus on one portion of the arbitration clause that is the subject of this case and point out a concern that should trouble this Court. The clause, among other things, states:
"[T]he arbitrator shall have no power to award punitive damages or other damages not measured by the prevailing party's actual damage."
I recognize that in Alabama there is no right to punitive damages; that may explain why this Court found no fault with this portion of the clause. However, this portion troubles me, because I have difficulty seeing a logical end to such waivers.
If, as in this case, the parties can waive a right to seek punitive damages, then what will prevent a party from drafting an arbitration agreement containing waivers of other kinds of damages? What about damages for emotional distress? What about future damages? What about compensatory damages? What about any damages whatsoever? I understand that I have taken this argument to an extreme, but it is a question that needs to be asked, and the extreme is not an illogical one. If, before a dispute arises, parties to a contract can agree to waive the right to trial by jury, a right guaranteed by both the Alabama Constitution and the United States Constitution, then what possible *1244 principle of law or contract would prevent them from waiving every single political right that this republic says that the individual is entitled to? Civil rights, rights to property, even the right to liberty, might be subject to contract.
For example, could an employee waive the right to any damages for a discharge made in retaliation for filing a workers' compensation claim? The employer makes no demand upon an employee if it demands the agreement prior to employment. If the employee signs such an agreement, why should a court not enforce it? I think the employer could claim an interest in protecting his business's financial position by preventing lawsuits alleging retaliatory discharge. Could the employee give up rights against racial or sexual discrimination, the duty to report the employer to the police for criminal activity such as an assault upon the employee, the right to a day's pay for a day's work, the right to ever leave the job,[3] the right not to have his or her personal effects or home searched?[4]
I recognize that this particular Court would most certainly stop the precipitous slide that would cause the loss of all rights by contract, at some point before the contractual waiver of these rights was enforced. My concern is with our reasoning in support of abrogating such an agreement. What would buttress the rationale? How would we justify the denial of the right to bargain away the right to be free from unlawful intrusion into our private affairs or the right to choose a job? Where is the consistency of logic? Or would we simply impose an ad hoc standard of review, allowing the loss of some rights by contract and not others? Where do we draw the line? I am not yet prepared to draw the line brightly. However, I do draw the line at the loss of a kind of remedy that should be imposed against a defendant that acts recklessly, intentionally, or maliciously against another. I do not think a guilty party should be able to walk away from an injurious act and be able to call it a financial "wash." Those who harm others should feel the sting of a judgment for damages. Could a thief contract with his victim to avoid any punishment beyond paying back the exact amount he stole?
This Court needs to address the problem of boundaries with respect to agreements of this sort. Where do we draw the line as to what someone can waive in a voluntary agreement? Because a person should not be able to avoid punishment for injuring another by bargaining with the targeted victim, I dissent. I dissent also because I believe the validity of the arbitration agreement should be determined by the trial courtnot by arbitrators.

On Application for Rehearing
HOUSTON, Justice.
APPLICATION OVERRULED.
MOORE, C.J., and SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
WOODALL, J., concurs specially.
WOODALL, Justice (concurring specially).
I concur to overrule the application for rehearing. I write only to emphasize two *1245 points concerning the dissent to this Court's opinion of April 13, 2001.
The dissent states that the Court found no fault with the portion of the arbitration clause that prohibits the arbitrator from awarding punitive damages. That statement is not correct, because this case was remanded "with instructions for the trial court to determine whether the arbitration clause is valid even though it prohibits the arbitrator from awarding punitive damages." 823 So.2d at 1243.
The dissent further states that it is based on the belief that the validity of the arbitration agreement should be determined by the trial court, not by the arbitrator. This Court's opinion is premised upon the principle that the validity of the clause at issue should be determined by the trial court and, in fact, that is the basis upon which this case has been remanded with instructions.

On Return To Remand
HOUSTON, Justice.
On April 13, 2001, we remanded this case to the trial court for that court to determine whether the arbitration clause contained in the "acknowledgment and agreement" signed by the plaintiffs and by a representative of Cavalier Manufacturing, Inc. ("Cavalier"), is valid, although the clause prohibits the arbitrator from awarding punitive damages. See Cavalier Mfg., Inc. v. Jackson, 823 So.2d 1237 (Ala.2001). Pursuant to our instructions, the trial court heard oral argument, and it then issued the following order:
"This matter is before the Court on remand from the Alabama Supreme Court with instructions that this Court make a determination as to whether the subject arbitration clause is valid in light of the fact that the clause prohibits the arbitrator from awarding punitive damages. The Court, now having fully considered the opinion of the Alabama Supreme Court, along with the submissions and arguments of counsel concerning the issue at hand, hereby ORDERS as follows:
"1. The Court finds that the subject arbitration clause is not valid or enforceable because it prohibits the arbitrator from awarding punitive damages. In this case the Plaintiffs have alleged, among other things, the tort of fraud. This Court holds that the prohibition against the award of punitive damages by an arbitrator denies them an adequate remedy. To hold otherwise would lead the logical mind to conclude that other types of damages could also be waived. In fact, to hold otherwise would force one to conclude that a drafter of an arbitration agreement could include in an arbitration agreement a provision which would waive damages of any sort or nature and even equitable relief. Such certainly cannot be the law in this State."
The arbitration clause in the acknowledgment and agreement reads:
"10. ARBITRATION. All parties hereto acknowledge and agree that this Agreement and the performance of the transactions contemplated hereby evidence transactions which involve a substantial nexus with interstate commerce. Accordingly, any dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties... (including any dispute, controversy or claim relating to the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties ... shall be governed by the Federal Arbitration Act and shall be settled by arbitration in accordance with the Commercial Arbitration Rules *1246 of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
". . . .
"... [T]he arbitrator shall have no power to award punitive damages or other damages not measured by the prevailing party's actual damage."
(Emphasis added.)
This appeal presents an issue of first impression in this State: Whether an arbitration clause that prohibits an arbitrator from awarding punitive damages is valid. For the following reasons, we hold that an arbitration clause that forbids an arbitrator from awarding punitive damages is contrary to public policy in Alabama and, thus, is void.
Alabama statutory law and public policy disfavor the specific performance of predispute arbitration agreements, and specific performance of such an agreement will not be ordered unless federal law preempts Alabama law as to a specific agreement. See Ala.Code 1975, § 8-1-41(3)[1]; U.S. Const. art. VI; American Bankers Ins. Co. of Florida v. Crawford, 757 So.2d 1125, 1137 (Ala.1999) (Houston, J., concurring in part and dissenting in part); Woodmen of the World Life Ins. Soc'y v. Harris, 740 So.2d 362, 366 (Ala.1999); and Wells v. Mobile County Bd. of Realtors, 387 So.2d 140, 144 (Ala.1980). Thus, an arbitration clause that prohibits an arbitrator from awarding punitive damages is enforceable only if federal law requires that it be enforced.
Although we recognize that federal policy favors arbitration, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), we note that, with respect to this issue, federal policy is unclear. Cavalier argues that the United States Supreme Court decided this issue in Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Cavalier states in its brief on appeal that the United States Supreme Court in Mastrobuono held that "private agreements to arbitrate are enforced according to their terms" and that a claim for punitive damages is determined by "what the contract has to say about arbitrability of [the] claim for punitive damages." (Cavalier's brief at p. 23.)
Cavalier incorrectly states the holding of Mastrobuono. The United States Supreme Court did not hold in Mastrobuono that private arbitration agreements are enforceable according to their terms; the language from Mastrobuono that is quoted in Cavalier's brief is actually a statement of the issuenot the holdingin that case. 514 U.S. at 53-54, 115 S.Ct. 1212. Second, Mastrobuono involves an agreement entirely different from the agreement in this case. Unlike Cavalier's acknowledgment and agreement, the agreement in Mastrobuono did not make any express references to a claim for punitive damages. 514 U.S. at 59, 115 S.Ct. 1212. Instead, the arbitration clause provided that any controversies "shall be settled by arbitration...." Id. at note 2. Furthermore, the choice-of-law clause in the Mastrobuono agreement stated that the agreement "shall be governed by the laws of the State of New York"; New York law limits the power to award punitive damages to judicial tribunals. Id. at 53-55, 115 S.Ct. 1212. In section 5 of the acknowledgment and agreement executed by the plaintiffs and *1247 Cavalier, the choice-of-law provision requires that Alabama law govern the agreement. Yet, Alabama law does not limit the power to award punitive damages to the judiciary.
The United States Supreme Court has not addressed this issue, and the federal circuit and district courts are divided on whether an arbitration clause that prohibits punitive damages is valid. The plaintiffs in their brief on appeal rely on Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir.1998), and Graham Oil Co. v. ARCO Products Co., 43 F.3d 1244 (9th Cir.1994), cert. denied 516 U.S. 907, 116 S.Ct. 275, 133 L.Ed.2d 195 (1995), in arguing that the federal courts oppose arbitration clauses that forbid punitive damages.[2] In Paladino, the arbitration agreement read: "The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages." 134 F.3d at 1056 (emphasis omitted). Paladino filed an action, alleging Title VII violations and seeking damages provided in Title VII. Id. at 1055. The United States Court of Appeals for the Eleventh Circuit stated that the trial court appropriately declined to order arbitration because the clause quoted above proscribed an award for damages that was provided by statute. Id. at 1060. The appellate court concluded that statutory remedies should be available to parties in arbitration. Id. at 1059.
Similarly, in Graham Oil, the arbitration clause stated: "The arbitrator(s) may not assess punitive or exemplary damages but may award both legal and equitable relief." 43 F.3d at 1249. The plaintiffs filed an action, alleging violations of the Petroleum Marketing Practices Act ("PMPA"), which provided exemplary damages for certain claims. Id. at 1246. The United States Court of Appeals for the Ninth Circuit concluded that the clause was invalid because it caused the plaintiff to surrender important remedies mandated by the PMPA. Id. at 1248.
Other federal cases, however, have upheld arbitration clauses that bar punitive-damages awards. Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 709 (7th Cir.1994)("[P]arties ... can stipulate that punitive damages will not be awarded."); and Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc., 598 F.Supp. 353, 365 (N.D.Ala.1984)("If parties to an arbitration agreement desire to exclude the issue of punitive damages from the consideration of an arbitrator and reserve it for judicial hearing, they are free to specify that in their contract."), aff'd, 776 F.2d 269 (11th Cir.1985). See also Automotive, Petroleum & Allied Indus. Employees Union, Local 618 v. Sears, Roebuck & Co., 581 F.Supp. 672 (E.D.Mo.1984); and Humble Oil & Refining Co. v. Local Union 866, 271 F.Supp. 281 (S.D.N.Y.1967).
Because the United States Supreme Court has not addressed this issue, and we can find no clear direction on this issue from federal law or federal policy, we conclude that Alabama law and public policy is not preempted. Therefore, we must determine whether an arbitration clause that forbids the arbitrator from awarding punitive *1248 damages is valid in a state that disfavors predispute arbitration clauses.
The plaintiffs argue that an arbitration clause that prohibits an arbitrator from awarding punitive damages contravenes public policy in Alabama because, they say, the clause "strips [them] of the relief and/or damages they have a legal right to recover under their fraud claims." ("Appellees' Response to the Appellant's Motion [to] File Supplemental Brief in Appeal of Order on Remand by the Circuit Court" at 4.) While Alabama law allows an injured party in a fraud action to seek punitive damages, see Ala.Code 1975, § 6-11-20(a),[3] the plaintiffs are incorrect when they state that they have a legal right to punitive damages.
Punitive damages (or "exemplary damages") are unique from compensatory or actual damages.[4] While the public policy behind compensatory damages strives to compensate the wronged party, the public policy behind punitive damages is to punish the wrongdoer and to deter others from engaging in the same conduct in the future. Green Oil Co. v. Hornsby, 539 So.2d 218, 222 (Ala.1989); and City Bank of Alabama v. Eskridge, 521 So.2d 931, 933 (Ala.1988).[5] In Alabama, punitive damages are available in a fraud action only where the plaintiff proves by clear and convincing evidence that the wrongdoer's conduct is malicious, oppressive, or gross, and that the misrepresentation that is the basis of the fraud is made with the knowledge of falsity and with the purpose of injuring the party. § 6-11-20(a)[6]; Eskridge, supra, at 933; Willoughby, supra, at 361; and Boulevard Chrysler-Plymouth, Inc. v. Richardson, 374 So.2d 857, 860 (Ala.1979).[7] Alabama law states, however, that an injured party is not entitled as a matter of right to punitive damages in fraud actions, Eskridge, supra, at 933, but that such damages are awarded at the discretion of the trier of fact, Green Oil, supra, at 222.
We hold that a predispute arbitration clause that forbids an arbitrator from awarding punitive damages is void as contrary to the public policy of this Stateto protect its citizens in certain legislatively prescribed actions from wrongful behavior and to punish the wrongdoer. If parties to an arbitration agreement waive an arbitrator's ability to award punitive damages, the door will open wide to rampant fraudulent conduct with few, if any, legal repercussions. The Legislature intended that punitive damages be available as a remedy in fraud actions, as evidenced by the enactment of § 6-11-20(a). The Legislature is endowed with the exclusive domain to formulate public policy in Alabama, a domain upon which the judiciary shall not trod. American Bankers Ins. Co. of Florida, 757 So.2d at 1137. Thus, we conclude that it is not within the province of parties to a *1249 predispute arbitration agreement to waive a punitive-damages award.
Despite our holding that arbitration agreements that bar punitive damages are void, the arbitration clause in this case is still enforceable. The acknowledgment and agreement reads:
"8. If any provision of this Agreement is found to be unenforceable (including, without limitation, any provision of Section 10 hereof), such provision shall be considered severed from the remaining provisions of this Agreement (including, without limitation, the remaining provisions of Section 10 hereof), and such remaining provisions shall be and remain in full force and effect."
(Emphasis added.)
Therefore, the provision in Section 10, which provides that "the arbitrator shall have no power to award punitive damages" is unenforceable and is therefore severed from the remainder of the agreement. The remaining provisions of Section 10 remain in full force and effect.
For the foregoing reasons, we hold that the arbitration clause is valid and enforceable and that the trial court, therefore, erred when it denied Cavalier's motion to compel arbitration. We reverse the trial court's judgment denying the motion and remand the case for the entry of an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE, J., dissents.
SEE, Justice (dissenting).
The Supreme Court of the United States has held repeatedly that where interstate commerce is involved, the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), preempts state-law provisions that would prevent the enforcement of arbitration agreements. See, e.g., Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)(holding that Alabama's anti-arbitration statute, § 8-1-41(3), Ala.Code 1975, which provides that a predispute arbitration agreement is unenforceable in state courts, must yield to the FAA when the agreement is part of a contract affecting interstate commerce); see also Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Moses Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp., 460 U.S. at 24, 103 S.Ct. 927; see also Lee v. Chica, 983 F.2d 883, 888 (8th Cir.1993) ("Even if we accepted as valid Chica's argument that under state law the parties did not agree to arbitrate punitive damages because Minnesota law does not allow an awarding of punitive damages, it would not be dispositive in this case. This case is governed by federal law.").
The majority opinion discerns "no clear direction ... from federal law or federal policy," 823 So.2d at 1247, on the question whether parties may agree that an arbitrator will be precluded from awarding punitive damages and, therefore, concludes that it is free to apply Alabama law to *1250 determine whether the agreement in this case is enforceable. I believe that federal law is quite clear, that it requires enforcement of the parties' agreement, and that federal policy prevails under the supremacy clause of the Constitution of the United States. U.S. Const. art. VI, cl. 2.
In Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the Supreme Court made clear that "the FAA's primary purpose [is to ensure] that private agreements to arbitrate are enforced according to their terms." The Court held that "parties are generally free to structure their arbitration agreements as they see fit." Id. Cavalier argues, therefore, that parties may, by agreement, preclude the arbitrator from awarding punitive damages. Cavalier further argues that the Supreme Court of the United States, in Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), signaled that an arbitration agreement including such a provision is enforceable. The Court summarized a party's argument and the issue as follows:
"Relying on our reasoning in Volt, respondents thus argue that the parties to a contract may lawfully agree to limit the issues to be arbitrated by waiving any claim for punitive damages. On the other hand, we think our decisions in Allied-Bruce, Southland, and Perry make clear that if contracting parties agree to include claims for punitive damages within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration. Thus, the case before us comes down to what the contract has to say about the arbitrability of petitioners' claim for punitive damages."
514 U.S. at 58, 115 S.Ct. 1212. The implication of this passage from Mastrobuono is that, as Cavalier argues, a provision in an arbitration agreement precluding the arbitrator from awarding punitive damages does not render the agreement unenforceable or outside the scope of the FAA. As the majority opinion of this Court accurately notes, Mastrobuono does not clearly hold that an arbitration clause that precludes the arbitrator from awarding punitive damages is enforceable; in fact, the holding of Mastrobuono is quite limited.[8] See Mastrobuono, 514 U.S. at 71-72, 115 S.Ct. 1212 (Thomas, J., dissenting). However, Mastrobuono is consistent with Volt and with decisions of various federal circuit courts of appeals that provide clear, direct support for Cavalier's argument.
Angela and Shawyn Jackson rely on two cases for the proposition that federal courts oppose arbitration clauses that forbid punitive damages: Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir.1998); and Graham Oil Co. v. ARCO Products Co., 43 F.3d 1244 (9th Cir.1994), cert. denied, 516 U.S. 907, 116 S.Ct. 275, 133 L.Ed.2d 195 (1995). Neither addresses the question at issue here.
Graham Oil addressed a dispute between two corporations engaged in the business of distributing gasoline products; the parties' arbitration agreement precluded the arbitrator from awarding punitive damages. The plaintiff sued, alleging violations of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801-06. The federal district court granted the defendant's *1251 motion to compel arbitration. The United States Court of Appeals for the Ninth Circuit reversed, noting that the plaintiffs right to punitive damages, if it proved its case, was a "statutorily-mandated" right. 43 F.3d at 1247. Because the arbitration clause forfeited a right granted by federal law, the court held, the arbitration agreement violated federal law and was unenforceable. Graham Oil involved conflicting federal statutesthe FAA and the PMPA. Here, the FAA conflicts not with another federal statute, but with a state statute, § 6-11-20(a), Ala.Code 1975.[9] The Supremacy Clause of the Constitution of the United States[10] requires that the state statute yield.
The arbitration provision in Paladino contained two separate clauses. The first stated that "the Company and I consent to the settlement by arbitration of any controversy or claim arising out of or relating to my employment or the termination of my employment." Paladino, 134 F.3d at 1056 (emphasis omitted). The second stated that "[t]he arbitrator is authorized to award damages for breach of contract only, and shall have no authority to make an award of other damages," Id. (Emphasis in Paladino.) Avnet fired Paladino; in response, Paladino filed a lawsuit "alleging violations of Title VII, a Florida anti-discrimination statute and Florida's common law." Id. The United States Court of Appeals for the Eleventh Circuit examined both clauses and determined that Paladino's claims were not subject to arbitration because the arbitration agreement did not "generally and fairly inform Paladino ... that it covers statutory claims such as Title VII claims," and because the arbitration agreement was "fundamentally at odds with the purposes of Title VII because it completely proscribes an arbitral award of Title VII damages." Id. at 1059. Thus, Paladino, like Graham Oil, and unlike this case, involved a conflict between two federal statutes.
Although Graham Oil and Paladino are inapposite to this case, various other decisions by the federal courts of appeals have addressed the issue presented here.
In Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704 (7th Cir.1994), the plaintiff invoked arbitration and was awarded both compensatory damages and punitive damages. The defendants argued that the arbitrators had exceeded their authority in awarding punitive damages because the arbitration agreement did not explicitly grant the arbitrator the authority to award such damages. The arbitration provision did not prohibit an award of punitive damages, but the court noted that parties were free to contract as they saw fit:
"Indeed, short of authorizing trial by battle or more doubtfully, by a panel of three monkeys, parties can stipulate whatever procedures they want to govern *1252 the arbitration of disputes; parties are as free to specify idiosyncratic terms of arbitration as they are to specify any other terms in their contract. For that matter, parties to adjudication have considerable power to vary the normal procedures, and surely can stipulate that punitive damages will not be awarded."
28 F.3d at 709 (citations omitted). Furthermore, that court noted that under "arbitrations governed by [the FAA], arbitrators are authorized to award punitive damages unless the parties have withdrawn that power." Id. at 710 (emphasis added). The United States Court of Appeals for the Eleventh Circuit, in Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378 (11th Cir.1988), held that "a clear provision in a contract prohibiting arbitrators from awarding punitive damages" would be enforceable. Id. at 1387 n. 16; see also Davis v. Prudential Securities, Inc., 59 F.3d 1186, 1192 n. 6 (11th Cir.1995) ("Presumably, therefore, even after the Supreme Court's decision in Mastrobuono, parties wishing to avoid the imposition of punitive damages in arbitration may simply expressly exclude punitive damages in the arbitration agreement.").
The weight of authority supports the conclusion that the parties to an arbitration agreement are free to agree that an arbitrator may not award punitive damages. See Baravati, supra; Bonar, supra; and Davis, supra; see also Gateway Techns., Inc. v. MCI Telecomms., Corp., 64 F.3d 993, 998 (5th Cir.1995) ("If Virginia law allowed the arbitrator to impose punitive damages and if the arbitration contract did not expressly prevent the arbitrator from doing so, then such an award would have fallen under the arbitrator's broad discretion to decide damages and fashion remedial relief."); and Raytheon Co. v. Automated Business Sys., Inc., 882 F.2d 6, 12 (1st Cir.1989) ("Parties that do wish arbitration provisions to exclude punitive damages claims are free to draft agreements that do so explicitly."). Whether such an agreement would be unenforceable under Alabama law is irrelevant, given the United States Supreme Court's clear command that arbitration agreements are to be "enforced according to their terms," Volt, 489 U.S. at 479, 109 S.Ct. 1248, and given the supremacy of federal law. U.S. Const. art. VI, cl. 2; see also Allied-Bruce, supra.
I, therefore, respectfully dissent.
NOTES
[1] The plaintiffs also sued Home Liquidation Company d/b/a C & J Manufactured Homes, Inc., whose representative signed the agreement that contained the arbitration clause. Home Liquidation filed a motion to dismiss, or, in the alternative, to stay proceedings and refer the plaintiffs' claims to arbitration. The record indicates that after hearing oral argument on the motion, the trial court took the case under "submission," but has not yet ruled on the motion.
[2] This Court, in Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131 (Ala.2000), held that the Magnuson-Moss Act does not invalidate arbitration provisions in a warranty. 772 So.2d at 1135; see Southern Energy Homes, Inc. v. Lee, 732 So.2d 994, 1004-13 (Ala.1999) (See, J., dissenting) (overruled by Ard, 772 So.2d 1131).
[3] Our caselaw, as well as § 8-1-41(1), Ala. Code 1975, prohibits a court from ordering enforcement of personal-service contracts, e.g., contracts that prevent a person from leaving a job. Such a contract smacks of slavery.
[4] I know that these scenarios appear utterly beyond the realm of possibility; however, the rights I have just mentioned would, in essence, relegate to a condition approximating chattel slavery the particular employee who agreed to them.
[1] Section 8-1-41(3) reads:

"The following obligations cannot be specifically enforced:
". . . .
"(3) An obligation to submit a controversy to arbitration...."
[2] The plaintiffs also cite Shankle v. B-G Maintenance Management of Colorado, Inc., 163 F.3d 1230 (10th Cir.1999), and Cole v. Burns International Security Services, 105 F.3d 1465 (D.C.Cir.1997), for the same proposition. Those cases, however, are distinguishable from this case because the courts of appeals in Shankle and in Cole focused on the validity of arbitration clauses that required the party invoking arbitration to pay a portion of the arbitrator's fees. The clauses in those cases, however, did not expressly limit an arbitrator's ability to award certain types of damages.
[3] Section 6-11-20(a), Ala.Code 1975, provides:

"(a) Punitive damages may not be awarded in any civil action, ... other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in ... fraud ... with regard to the plaintiff."
[4] The trial court is incorrect in stating that compensatory damages can be waived in an arbitration agreement. The right to compensatory damages is protected by § 13 of the Alabama Constitution of 1901. Clark v. Container Corp. of America, Inc., 589 So.2d 184, 193 (Ala.1991).
[5] See Lorenzo Marinuzzi, Punitive Damages in Arbitration: The Debate Continues, 52 Disp. Resol. J. 67 (Summer 1997).
[6] See note 3 for text of § 6-11-20(a).
[7] See also Glower W. Jones, Awarding Punitive Damages by Arbitration, 7 Construction Law. 1, 23 (Aug.1987).
[8] The holding in Mastrobuono is limited to deciding (1) whether the inclusion of the phrase "the laws of the State of New York" in the choice-of-laws section of the contract precluded punitive damages; (2) whether the contract should have been construed against Shearson; and (3) whether the punitive-damages award should be upheld.
[9] Section 6-11-20(a), Ala.Code 1975, provides:

"(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama."
[10] "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."

U.S. Const. art. VI, cl. 2.